1

2

3

4

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

Global Connect Technology, Inc.,

           Plaintiff,

     v.

Christie's International PLC, Best Buy
Co., Inc., and Costco Wholesale
Corporation,

           Defendants.

Case No. 2:24-CV-00647-JRG
(Lead Case)


**DEFENDANT COSTCO WHOLESALE**
**CORPORATION'S MOTION TO**
**DISMISS UNDER RULE 12(b)(6) AND**
**MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................1

II.    STATEMENT OF ISSUES ...........................................................................2

III.   STATEMENT OF FACTS.............................................................................2

IV.    LEGAL STANDARD ....................................................................................5

V.     ARGUMENT..................................................................................................6

       1.     *Alice*/*Mayo* Step 1 ........................................................................7

       2.     *Alice*/*Mayo* Step 2 ......................................................................13

       3.     The Patent Office Has Already Found Similar Related Claims
              Ineligible under Section 101. ..................................................15

       4.     The Remaining Claims Are Also Ineligible...................................16

       5.     There Are No Issues of Fact or Claim Construction That Would
              Preclude Dismissal under Section 101...................................19

VI.    CONCLUSION ............................................................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l,*
573 U.S. 208 (2014)................................................................................*passim*

*Apple, Inc. v. Ameranth, Inc.,*
842 F.3d 1229 (Fed. Cir. 2016) ........................................................17

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)............................................................................5

*ASK Sydney, LLC v. Amazon.com Servs., LLC,*
688 F. Supp. 3d 403 (W.D. Tex. Aug. 14, 2023) ...............................15

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC,*
915 F.3d 743 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 855 (2020) .................20

*BASCOM Global Internet Servs. v. AT&T Mobility LLC,*
827 F.3d 1341 ....................................................................................13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)............................................................................5

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018) ..........................................................6

*Beteiro, LLC v. Draftkings Inc.,*
104 F.4th 1350 (Fed. Cir. 2024) ...................................................7, 8, 9

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019) ...........................................................20

*Content Extraction & Transmission LLC v. Wells Fargo Bank,*
776 F.3d 1343 (Fed. Cir. 2014) .......................................................6, 7

*Electric Power Group, LLC v. Alstom S.A.*
830 F.3d 1350 (Fed. Cir. 2016) .....................................................9, 14

*Genetic Techs. Ltd. v. Merial L.L.C.,*
818 F.3d 1369 (Fed. Cir. 2016) ..........................................................6

*IBM v. Zillow Group, Inc.*
50 F.4th 1371 (Fed. Cir. 2022) .........................................................11

-ii-

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017) ...................................................................10, 14

*Mayo Collaborative Servs. v. Prometheus Labs.*,
    566 U.S. 66 (2012)................................................................................................5

*Mobile Acuity Ltd. v. Blippar Ltd.*
    110 F.4th 1280 (Fed. Cir. 2024) ........................................................................10

*Network Architecture Innovations LLC v. CC Network Inc.*,
    No. 2:16-CV-00914-JRG, 2017 U.S. Dist. LEXIS 59310 (E.D. Tex.
    Apr. 18, 2017)......................................................................................................6

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) .........................................................6, 7, 14, 19

*Thompson v. City of Waco*,
    764 F.3d 500 (5th Cir. 2014) ..............................................................................5

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ............................................................................6

*Uniloc USA, Inc. v. ADP, LLC*,
    772 Fed. Appx. 890 (Fed. Cir. 2019)..................................................................3

**Statutes**

35 U.S.C. § 101 ............................................................................................*passim*

35 U.S.C. § 154 .......................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...............................................................................*passim*

Fed. R. Civ. P. 12(e) ...............................................................................................1

1

## I.    INTRODUCTION

2

3    Plaintiff Global Connect Technology, Inc. ("Plaintiff") filed its Original

Complaint for Patent Infringement (Dkt. No. 1)[1] ("Complaint") alleging infringement

4    of U.S. Patent No. 7,246,128 ("'128 Patent"). Complaint, ¶¶ 9 & 29. Defendant Costco

5    Wholesale Corporation ("Costco") respectfully requests dismissal of Plaintiff's

6    Complaint under Rule 12(b)(6) because the Asserted Claims are invalid under 35 U.S.C.

7    § 101 and the *Alice*/*Mayo* test.[2] *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

8    The '128 Patent and its claims are directed solely to the abstract idea of retrieving

9    and displaying data. Courts have reviewed very similar claims before and found that

10   claims of this kind are too abstract for patenting under Section 101 unless they further

11   provide some "inventive concept." The '128 Patent has no inventive concept in the

12   claims to transform the claimed abstract idea into patentable subject matter. The claims

13   merely implement the abstract idea using generic computer components. In fact, a

14   subsequent application in this same patent family, which was examined *after* the *Alice*

15   decision, was abandoned after being rejected on Section 101 grounds. This further

16   suggests that the subject matter of the '128 patent is abstract.

17

18   _____

[1] Docket numbers refer to Member Case No. 2:24-cv-00649-JRG.

19   [2] Plaintiff's Complaint is deficient for additional reasons, including failing to
adequately state an infringement claim under Rule 12(b)(6) and being vague and

20   ambiguous under Rule 12(e). For example, Exhibit A to the Complaint fails to set forth
a clear basis for the alleged infringement. The threshold issue is the invalidity of the

21   '128 Patent, but Costco reserves the right to bring additional motions to challenge the
sufficiency of the Complaint if it is ultimately required to respond to the specific

22   allegations in the Complaint.

There are no disputed facts, and the application of the law is clear: the claims of the '128 Patent are ineligible under Section 101 and the *Alice/Mayo* test. Plaintiff's Complaint must be dismissed.

## II.    STATEMENT OF ISSUES

(1)    Should Plaintiff's Complaint be dismissed because the Asserted Claims are directed to ineligible subject matter under 35 U.S.C. § 101 and the *Alice/Mayo* test, and because the Asserted Claims do not provide any inventive concept?

## III.    STATEMENT OF FACTS

Plaintiff commenced the present action on August 8, 2024 by filing Plaintiff's Complaint, and Costco was served with the Complaint on December 4, 2024 (Dkt. Nos. 1 & 4). Plaintiff's Complaint alleges infringement of the '128 Patent. Complaint, ¶¶ 9 & 29. Specifically, the Complaint alleges infringement of claim 21 of the '128 Patent. Complaint, ¶ 29 & Ex. A.

The '128 Patent was filed on June 12, 2003, claiming priority to U.S. Provisional Application No. 60/388,095 filed on June 12, 2002, and the '128 Patent issued on July 17, 2007. '128 Patent, p. 1. The '128 Patent expired on or around June 13, 2024. *See id.* & 35 U.S.C. § 154.[3] Notably, the '128 Patent issued seven years *before* the Supreme Court's landmark *Alice* decision, which clarified the law relating to ineligibility of patent claims directed to abstract subject matter. The examiner who allowed the '128

---

[3] This expiration date reflects a term of 20 years measured from the filing date, with 366 days added for patent term adjustment granted by the Patent Office.

Patent, thus, did not have the benefit of the *Alice* decision when examining the application that issued as the '128 Patent. Additionally, a subsequent case in the same patent family that shares a specification with the '128 Patent and was examined *after* the *Alice* decision – U.S. Patent Application No. 13/857,807 ("'807 Application") – was abandoned after the claims were rejected under Section 101.[4] *See* Exs. A & B.

The '128 Patent is titled "Data Storage, Retrieval, Manipulation and Display Tools Enabling Multiple Hierarchical Points of View." '128 Patent, p. 1. The '128 Patent states that it relates to "the field of computers, and more particularly to the field of computer database systems and methods." '128 Patent, 1:14-16.

In the background of the disclosure, the '128 Patent states that there is a need for "a system that permits the storage, retrieval and manipulation of a given set of data in different contexts." '128 Patent, 2:15-17. More specifically, the '128 Patent states that "a system is needed that permits a user to establish a point of view, such as via a hierarchy, and that allows the user to retrieve, manipulate, and display data according to that point of view." '128 Patent, 2:17-20. The '128 Patent states:

> As used herein, "point of view" or "individual point of view" can reflect a particular individual's or entity's way of looking at data within a frame of reference. The point of view can be thought of as a filter for data within the frame of reference. Points of view can embody an individual's view of the significance and interest of particular data. Set theory can be used to build a

---

[4] The prosecution history of a patent is a matter of public record, which is subject to judicial notice. *Uniloc USA, Inc. v. ADP, LLC*, 772 Fed. Appx. 890, 898 n.3 (Fed. Cir. 2019). U.S. Patent Application No. 13/857,807 was filed on April 5, 2013 as a continuation in the same family as the '128 Patent. In a final Office Action dated April 29, 2016, all pending claims were rejected as abstract under Section 101 and *Alice*. The application was then abandoned for failure to respond to the Office Action.

1   point of view, asking with respect to a data element, for example, whether it
2   is a member of a particular set or whether it is an exact match, or partial
    match, to another element or item.

3   '128 Patent, 12:17-26.

4       Claim 21 of the '128 Patent recites "[a] system for enabling multiple hierarchical

5   points of view." The claimed system comprises:

6       • "a host processor"

7       • "a user interface controlled by the host processor for inputting points of
8         view to the system"

9       • "a connections generator controlled by the host processor and in
10        communication with the user interface to receive the points of view and
11        generate connections between elements in the points of view and metadata
12        of data sources"

13      • "a connections database operated on by the connections generator in
14        generating the connection and having a data structure including degrees of
15        matching between data elements in the connections database and the
16        metadata" and

17      • "matching applications controlled by the host processor and operating on
18        the data sources to determine sets of data elements in the data sources
19        having at least pre-selected degrees of matching with the elements in the
20        points of view, the user interface displaying the data elements and degrees
21        of matching for the data elements according to the points of view."

22

-4-

1 | **IV.    LEGAL STANDARD**

2    To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state

3  a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

4  570 (2007). A claim is facially plausible when the plaintiff pleads enough facts to allow

5  the court to draw a reasonable inference that the defendant is liable for the misconduct

6  alleged. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014). (quoting *Ashcroft*

7  *v. Iqbal*, 556 U.S. 662, 678 (2009)). Where the facts alleged do not support a reasonable

8  inference of liability, stronger than a mere possibility, the claim must be dismissed.

9  *Iqbal*, 556 U.S. at 678-79.

10    Under Section 101, it is well settled that laws of nature, natural phenomena, and

11  abstract ideas are not patentable. *See Alice*, 573 U.S. at 216. The Supreme Court has

12  explained that these categories are ineligible for patenting because "they are the basic

13  tools of scientific and technological work," which are "free to all [people] and reserved

14  exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 71

15  (2012) (citations omitted).

16    *Alice* sets forth a two-step test to determine whether a claim is invalid under

17  Section 101 as being solely directed to an abstract idea. *Alice*, 573 U.S. at 217. At Step

18  1, courts determine whether the claims at issue are directed to a law of nature, a natural

19  phenomenon, or an abstract idea. *Id*. If it is determined that the claims are directed to

20  one of these categories, then the analysis proceeds to Step 2, where courts determine

21  whether the claims are nonetheless eligible because they contain an inventive concept

22

1  that amounts to significantly more than the law of nature, natural phenomenon, or

2  abstract idea. *Id*. at 217-18.

3      Eligibility under Section 101 is a question of law, which may be based on

4  underlying facts. *See, e.g., Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

5  A claim can be invalidated under Section 101 on a Rule 12(b)(6) motion "where the

6  undisputed facts, considered under the standards required by that Rule, require a holding

7  of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*,

8  898 F.3d 1161, 1166 (Fed. Cir. 2018). Moreover, claim construction is not required

9  prior to ruling on a Rule 12(b)(6) motion. *See Content Extraction & Transmission LLC*

10 *v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming grant of

11 dispositive motion prior to claim construction); *accord Ultramercial, Inc. v. Hulu, LLC*,

12 772 F.3d 709, 718-20 (Fed. Cir. 2014).

13     The Federal Circuit has "repeatedly recognized that in many cases it is possible

14 and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6)

15 motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016).

16 This Court likewise has granted motions to dismiss for invalidity under Section 101.

17 *See, e.g., Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-CV-

18 00914-JRG, 2017 U.S. Dist. LEXIS 59310 (E.D. Tex. Apr. 18, 2017).

19 **V.    ARGUMENT**

20     Accepting the factual allegations in the Complaint as true, and construing the

21 pleadings in the light most favorable to the Plaintiff, Plaintiff still fails to state a claim

22 upon which relief can be granted because the Asserted Claims are ineligible under

-6-

Section 101. The '128 Patent is directed retrieving and displaying data. None of the claims add an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 216. The '128 Patent should be found invalid under Section 101, and Plaintiff's Complaint should be dismissed.

The below analysis discusses representative claim 21. The remaining claims are abstract for similar reasons, and they similarly do not add any inventive concept.[5]

### 1. *Alice/Mayo* Step 1

Step 1 of the *Alice/Mayo* test considers whether the Asserted Claims are directed to a patent-ineligible abstract idea. In determining whether claims are directed to an abstract idea at Step 1, courts consider the "focus of the claims" and "their character as a whole." *SAP*, 898 F.3d at 1167 (internal quotations and citations omitted). Here, claim 21 is directed to the abstract idea of retrieving and displaying data. The '128 Patent fails Step 1.

In the recent *Beteiro, LLC v. Draftkings Inc.* case, the Federal Circuit identified four "well-settled indicators of abstractness" that are helpful for analyzing claims at

---

[5] Courts need not individually address all claims where the asserted claims "are substantially similar in that they recite little more than the same abstract idea" and where one claim is representative. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Here, the Complaint specifically alleges only infringement of claim 21, and it is unclear what other claims (if any) are being asserted. For purposes of the present motion, Costco submits that claim 21 is representative and that the other claims are also ineligible, and Costco reserves the right to further address any later-asserted claims as necessary.

Step 1. 104 F.4th 1350, 1355 (Fed. Cir. 2024). **First**, the Federal Circuit considered whether "the claims broadly recite generic steps of a kind [it has] frequently held are abstract." *Id*. These generic steps include, for example, "detecting," "generating and transmitting," "receiving a message," "determining," and "processing information." *Id*. **Second**, the Federal Circuit considered whether "the claims are drafted using largely (if not entirely) result-focused functional language, containing no specificity about how the purported invention achieves those results." *Id*. at 1356. **Third**, the Federal Circuit considered whether "broadly analogous claims" have been held abstract. *Id*. **Fourth**, the Federal Circuit considered whether the claims can be analogized to "longstanding 'real-world' ('brick and mortar') activities." *Id*. Each of these indicators are present in this case.

**First**, claim 21 broadly recites generic operations performed by generic computing components. For example, the claimed "user interface" is used for the generic operation of "inputting" data. The "connections generator" and the "connections database" are both used in relation to "generating" connections. The "matching applications" are used to "determine sets of data elements." Each of these operations are similar to the "generic steps" discussed on *Beteiro*.

**Second**, claim 21 is drafted using result-focused functional language. For example, claim 21 fails to specify *how* the "connections generator" is used to "generate connections between elements in the points of view and metadata of data sources." Similarly, claim 21 fails to specify *how* the "matching applications" are used to "determine sets of data elements in the data sources having at least pre-selected degrees

of matching with the elements in the points of view." Instead, the claim limitations are broadly focused on results while "containing no specificity about how the purported invention achieves those results." *Id*. at 1356.

**Third**, claim 21 is analogous to claims that have been held abstract in other cases.

**Electric Power:** Claim 21 is similar to claims found abstract in *Electric Power Group, LLC v. Alstom S.A.* 830 F.3d 1350 (Fed. Cir. 2016). The claims in *Electric Power Group* were directed to "performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results." *Id*. at 1351. A representative claim recited particular data received in "a plurality of data streams" and from other data sources, which is analyzed in real time to detect events. *Id*. at 1351-52. Results of the event analysis are displayed. *Id*. The Federal Circuit explained that the purported advance made by the claims "is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." *Id*. at 1354. Additionally, the focus of the claims was not on "an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Id*. The claims were found to be directed to an abstract idea at Step 1. *Id*.

Here, claim 21 is similarly directed to analyzing data and displaying the results of the analysis. Like the claims in *Electric Power Group*, claim 21 performs operations related to data from multiple "data sources." For example, the claimed system includes "matching applications…to determine sets of data elements in the data sources having

at least pre-selected degrees of matching with the elements in the points of view." Additionally, the claimed system provides a user interface, which displays "the data elements and degrees of matching for the data elements according to the points of view." In other words, the claimed system merely determines "elements" in data sources based on matching with "elements" in received points of view, and the system displays these data elements in a user interface. This is strikingly similar to the subject matter claimed in *Electric Power Group* of "collecting data from multiple data sources, analyzing the data, and displaying the results." 850 F.3d at 1351. Like the claims in *Electric Power Group*, claim 21 does not claim any improvement to computers as tools – rather, it uses computers as a tool to implement an abstract idea.

**Mobile Acuity:** Claim 21 is also similar to claims found abstract in *Mobile Acuity Ltd. v. Blippar Ltd.* 110 F.4th 1280 (Fed. Cir. 2024). In *Mobile Acuity*, the claims related to storing information so that it can be accessed using a captured image. *Id*. at 1284. The Federal Circuit found that the claims "are directed to the abstract idea of receiving information, associating information with images, comparing the images, and presenting information based on that comparison." *Id*. at 1292. In finding the claims abstract, the Federal Circuit noted that it has "frequently held" that "claims reciting generalized steps of collecting, analyzing, and presenting information, using nothing other than the conventional operations of generic computer components, are directed to abstract ideas." *Id*. at 1293.

Like the claims in *Mobile Acuity*, claim 21 is directed to a particular way of storing and retrieving information in the abstract. Whereas the claims in *Mobile Acuity*

1  relied on comparing image data, claim 21 uses matching of data elements in "points of

2  view" and "data sources." For example, as discussed above, the claimed "matching

3  applications" are used "to determine sets of data elements in the data sources having at

4  least pre-selected degrees of matching with the elements in the points of view." These

5  data elements and degrees of matching are then displayed in a user interface. For the

6  same reasons discussed in *Mobile Acuity*, claim 21 should also be found abstract at Step

7  1.

8       **IBM:** Claim 21 is also similar to claims found abstract in *IBM v. Zillow Group,*

9  *Inc.* 50 F.4th 1371 (Fed. Cir. 2022). The claims in *IBM* were "directed to limiting and

10 coordinating the display of information based on a user selection." *Id*. at 1378.

11 Specifically, a representative claim in *IBM* allows a user to input "a selection area" on

12 a displayed map, and elements on the display are selected or deselected on the map

13 based on the user input. *Id.* at 1375. The patentee argued that the claims were non-

14 abstract because they improve "the ability of users to identify and analyze relevant data

15 in otherwise large data sets." *Id*. at 1378. In rejecting this argument, the Federal Circuit

16 found that "[i]dentifying, analyzing, and presenting certain data to a user is not an

17 improvement specific to computing." *Id*.

18      Like in *IBM*, claim 21 merely recites an abstract way of displaying relevant data

19 based on a user input. For example, the claimed "user interface" is used "or inputting

20 points of view to the system," and the points of view are used to determine data elements

21 in data sources, which are displayed "according to the points of view." The '128 Patent

22 specification states that a "point of view" may be "an individual's view of the

1   significance and interest of particular data." '128 Patent, 12:21-22.[6] In other words, the

2   points of view are a tool for implementing the abstract idea of presenting relevant data

3   to a user. While Plaintiff may argue that the claimed technology allows a user to identify

4   and analyze data relevant to a particular point of view, alleged improvements of this

5   kind are insufficient to prove a claim non-abstract, as discussed in *IBM*.

6   **Fourth**, claim 21 can be analogized to real-world, brick-and-mortar activities. As

7   discussed above, claim 21 is broadly directed to retrieving and displaying data based on

8   particular "points of view." Plaintiff argues that the requirements of the claim are met,

9   for example, where a "user can select both 'Apple' and 'HP' under the 'Brand' filter,"

10  or where product search results are filtered based on multiple product features, which

11  Plaintiff interprets as using multiple "points of view." Complaint, Ex. A, pp. 4 & 7-8.[7]

12  Assuming *arguendo* that this interpretation is correct, retrieving relevant information

13  spanning multiple categories and presenting or displaying those options is a

14  longstanding real-world activity. Indeed, a merchant can *manually* retrieve both Apple

15  and HP laptops and display those options to a customer. A librarian can manually

16  retrieve books by Edgar Allan Poe *and* by Ernest Hemingway, or books categorized by

17  genre (e.g., mystery) *and* by subject (e.g., dogs) and display those results to a library

18  _____

19  [6] Plaintiff's claim chart (Complaint, Ex. A) cites to this portion of the disclosure in
    relation to the claimed "points of view." While Costco must accept Plaintiff's

20  contentions for the purposes of this motion, Costco does not concede Plaintiff's
    interpretation of the claims or Plaintiff's theory of infringement and reserves all rights.

21  [7] Again, Costco reserves its rights but accepts Plaintiff's contentions for the purposes of
    this motion. This example shows that, even under Plaintiff's interpretation of the claims,

22  they are directed to an abstract idea.

-12-

1    patron. A hotelier can manually identify rooms having multiple beds *and* a balcony and

2    present those options to a guest. Each of these are longstanding real-world activities that

3    fit the Plaintiff's interpretation of the claims.

4         For the foregoing reasons, the Asserted Claims are directed to an abstract idea at

5    Step 1 of the *Alice*/*Mayo* test because each of the well-settled indicators of abstractness

6    discussed in *Beteiro* are present here. Moreover, the claims merely recite a particular

7    way of retrieving and displaying data based on a user input, which is clearly an abstract

8    idea under *Electric Power Group*, *Mobile Acuity*, and *IBM*.

9              **2.  *Alice*/*Mayo* Step 2**

10        At Step 2 of the *Alice*/*Mayo* test, the Asserted Claims do not provide any

11   inventive concept sufficient to transform the abstract idea into patent-eligible subject

12   matter. An inventive concept that transforms an abstract idea into a patent-eligible

13   invention must be ***significantly more*** than the abstract idea itself and cannot be a mere

14   instruction to implement or apply the abstract idea using generic computer components.

15   *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349. "[T]he

16   mere recitation of a generic computer cannot transform a patent-ineligible abstract idea

17   into a patent-eligible invention." *Alice*, 573 U.S. at 223. Likewise, implementing an

18   abstract idea in a "particular technological environment" is insufficient to establish

19   patent eligibility. *See id.* at 222.

20        Here, the Asserted Claims merely implement the abstract idea using generic

21   computer components, including a "host processor," "a user interface," and a

22   "connections database," as in claim 21 of the '128 Patent. Similar claim limitations were

-13-

1   insufficient to provide an inventive concept in *SAP*. In *SAP*, the Federal Circuit noted

2   that "[s]ome of the claims require various databases and processors," but "these

3   limitations require no improved computer resources [patentee] claims to have invented,

4   just already available computers, with their already available basic functions, to use as

5   tools in executing the claimed process." 898 F.3d at 1169-70. Similarly, the generic

6   components recited in claim 21 amount to nothing more than available computer

7   components used as a tool to execute an abstract idea. This is insufficient to provide an

8   inventive concept at Step 2.

9       The result-focused limitations of the Asserted Claims do not specify ***how*** the

10  indicated results are achieved. Where a claim fails to explain the mechanism by which

11  a recited result is accomplished, the claim does not provide an inventive concept under

12  Step 2 of *Alice*. *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315,

13  1331-32 (Fed. Cir. 2017); *See also Electric Power Group* 830 F.3d at 1355 (Step 2

14  inquiry turns on "requirements for *how* the desired result is achieved"). For example,

15  claim 21 does not provide specifics on how "connections" are generated by the

16  "connections generator" or how the elements are determined by the "matching

17  applications."

18      Thus, the only limitations of the Asserted Claims beyond the abstract idea consist

19  of components that are plainly generic and insufficient to transform the abstract idea

20  into patent-eligible subject matter. The Asserted Claims are therefore ineligible under

21  the *Alice*/*Mayo* test because they lack any inventive concept.

22

-14-

### 3. The Patent Office Has Already Found Similar Related Claims Ineligible under Section 101.

The abandonment of the '807 Application after a Section 101 rejection is a further indication that the Asserted Claims are also abstract. While the Patent Office's analysis is not binding on this Court, it is a compelling indication that the Asserted Claims are abstract, and that the Patent Office would have rejected them as abstract had they been examined after *Alice*. *See ASK Sydney, LLC v. Amazon.com Servs., LLC*, 688 F. Supp. 3d 403, 417 (W.D. Tex. Aug. 14, 2023) (taking judicial notice of Patent Office rejections in the context of a 12(b)(6) motion).

For example, claims 6 and 7 of the '807 Application recited limitations that are similar to claim 21 in the present case. Claim 6 was directed to "[a] category management system which can control storage, retrieval, modification and reporting on structured and unstructured data…" *See* Ex. A ('807 Application, Supplemental Amendment dated February 17, 2016), p. 3. Claim 6 included "a user interface for encoding a graphical representation of an individual point of view." *Id*. The claimed system comprised instructions to "receive input from a user defining the graphical representation [of the individual point of view]." *Id*. Additionally, claim 7 depended from claim 6 and further included limitations related to generating "a query" and displaying "results of the query in accordance with the graphical representation [of the individual point of view]." *Id*. The similarities between these claims and claim 21 of the '128 Patent are clear. Both are directed to the same abstract idea of retrieving and displaying data.

MOTION TO DISMISS AND MEMORANDUM IN SUPPORT                    Case No. 2:24-CV-00647-JRG

The Patent Office rejected all pending claims of the '807 Application as being directed to unpatentable subject matter under Section 101 and *Alice*. *See* Ex. B ('807 Application, Office Action dated April 29, 2016), pp. 9-11. Specifically, the Patent Office found that the claims did not "move beyond basic 'category information' and 'search for members,'" which is an abstract idea. *Id*. Additionally, the Patent Office rejected the claims for double patenting because the Patent Office found that they were "not patentably distinct from" claims 1, 21, 26, and 30 of the '128 Patent. *Id*. at pp. 12-13. The '807 Application was subsequently abandoned for failure to respond to this Office Action.

The examiner who examined the '128 Patent unfortunately did not have the benefit of the *Alice* decision when the '128 Patent was allowed because the '128 Patent issued several years before the *Alice* decision. But the subsequent rejection of the '807 Application on *Alice* grounds and double patenting grounds further supports the conclusion that the Asserted Claims are directed to unpatentable subject matter under *Alice*.

### 4.  The Remaining Claims Are Also Ineligible.

While the above analysis focuses on claim 21, which is the only claim discussed in the Complaint, the remaining claims also fail both steps of the *Alice*/*Mayo* test because they recite the same abstract idea and they do not claim any inventive concept.

Claims 22-25 depend from claim 21. They recite the same abstract idea discussed above, and they do not claim any inventive concept:

- Claim 22 recites a "communications application," which is claimed in a generic and functional way similar to the "matching applications" of claim 21.

- Claim 23 recites a "significance and interest processor," which is a generic computer component like the "host processor," and which is claimed as performing result-focused operations.

- Claim 24 recites "executable logic modules," which are used in relation to formatting results for output – that is, for displaying the data.

- Claim 25 recites examples of the "matching applications," which are similarly abstract.

None of the foregoing claims recite non-abstract subject matter or any inventive concept sufficient to transform the abstract idea of claim 21 into patentable subject matter. For example, they merely add further conventional and generic features. *See Alice*, 573 U.S. at 223. Additionally, the foregoing claims recite insignificant post-solution activity, which is insufficient to provide an inventive concept. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016).

Independent claim 1 recites "[a] computer program tangibly stored on a computer-readable medium and configured to cause a computer to enable a user interface for encoding a graphical representation of an individual point of view (iPOV)." Like claim 21, claim 1 is directed to an abstract way of retrieving and displaying data. This abstract idea is implemented using similarly generic components, including "a user

-17-

1    interface." Claim 1 is directed to the same abstract idea, and it fails to provide any

2    inventive concept.

3    Claims 2-18 depend from claim 1, and they are ineligible for similar reasons

4    discussed above with reference to claims 22-25. These claims are directed to the same

5    abstract idea, and they merely add generic computer components, processing

6    operations, and post-solution activity that is insufficient to transform the abstract idea

7    into patentable subject matter.

8    Independent claim 19 recites "[a] computer-readable medium containing data

9    structure for defining the set theory used to describe sets of data in the data structure."

10   By its own terms, claim 19 is merely directed to a particular way of structuring data,

11   and the data structure is used to present "at least one of the set members and the degrees

12   of matching" to a user. Claim 19 is directed to the same abstract idea as claim 21, and

13   it is abstract for the same reasons. Claim 20 depends from claim 19, and it is similar to

14   claim 25 discussed above. Claim 20 is likewise ineligible under Section 101.

15   Independent claim 26 recites "[a] computer program tangibly stored on a

16   computer-readable medium and configured to cause a computer to enable searching of

17   data records." It is directed to the same abstract idea as claim 21, and it recites similarly

18   generic components, including "a connections generator" and "a connections database."

19   Claim 26 is, therefore, abstract for the same reasons as claim 21.

20   Claims 27-29 depend from claim 26. These claims are directed to the same

21   abstract idea, and they merely add generic computer components, processing

22

-18-

operations, and post-solution activity that is insufficient to transform the abstract idea into patentable subject matter.

Independent claim 30 recites "[a] computer program tangibly stored on a computer-readable medium and configure[d] to cause a computer to enable a user interface for encoding a configuration of a similarity engine." The claimed computer program merely displays particular data to a user, similar to the system of claim 21. Claim 30 recites similarly generic components, including "a computer" and "a user interface." Claim 30 is ineligible under Section 101 for the same reasons discussed above with reference to claim 21.

Claim 31 depends from claim 30. Claim 31 merely recites additional limitations regarding how data is presented to a user. Claim 31 is abstract for similar reasons discussed above with reference to claims 22-25, and claim 31 fails to provide any inventive concept.

### 5. There Are No Issues of Fact or Claim Construction That Would Preclude Dismissal under Section 101.

As discussed above, a claim can be invalidated under Section 101 on a Rule 12(b)(6) motion "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP*, 898 F.3d at 1166. Here, there are no factual issues that would preclude dismissal for invalidity under Section 101. While the Complaint contains a conclusory statement that the '128 Patent is "valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code" (Complaint, ¶ 11), this is insufficient to create a

-19-

factual dispute. Moreover, dismissal under Section 101 is appropriate where, as here, the claims and specification confirm the lack of an inventive concept, regardless of allegations in the Complaint or purported extrinsic evidence to the contrary. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 776 (Fed. Cir. 2019); *see also Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 755-56 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 855 (2020) (holding that the district court properly dismissed the complaint because plaintiff's "expert declaration made allegations inconsistent with the [patent-in-suit]").

Costco has made its arguments accepting the allegations in the Complaint as true, and under Plaintiff's own interpretation of the Asserted Claims, the Asserted Claims are abstract under Section 101 and the *Alice/Mayo* test. For example, as discussed above, claim 21 merely displays "data elements and degrees of matching for the data elements according to the points of view." Even if the term "points of view" would need to be construed prior to trial, Costco has used Plaintiff's interpretation of "points of view," and there is no construction of this term that would render claim 21 non-abstract. Regardless of claim construction arguments, claim 21 is solely directed to the abstract idea of retrieving and displaying data, and claim 21 fails to provide any inventive concept for the reasons discussed above.

The Court can and should hold the Asserted Claims to be invalid under Section 101 and *Alice* because no construction of the claims is needed to reach this conclusion, and because the claims are abstract under any interpretation.

-20-

## VI. CONCLUSION

For the foregoing reasons, Plaintiff has failed to state a claim upon which relief can be granted because the Asserted Claims are invalid under 35 U.S.C. § 101 and the *Alice*/*Mayo* test. The Court should therefore dismiss the Complaint with prejudice.

DATED: February 21, 2025.                    DORSEY & WHITNEY LLP

By  */s/ Case Collard*
Case Collard, Colorado Bar No. 40692
collard.case@dorsey.com
Dorsey & Whitney LLP
1400 Wewatta Street
Suite 400
Denver, CO 80202-5549
Telephone: (303) 352-1116
Fax: (303) 629-3450

*Attorneys for Defendant Costco Wholesale Corporation*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was filed electronically on February 21, 2025 pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service. Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ Stacy Starr*
Dorsey & Whitney LLP

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S 35 U.S.C. § 101 MOTION PRACTICE ORDER

_____     ~~The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.~~

___X___     The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

*/s/ Case Collard*
Dorsey & Whitney LLP