# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| Global Connect Technology, Inc., | |
| Plaintiff, | Case No. 2:24-CV-00647-JRG (Lead Case) |
| v. | |
| Christie's International PLC, Best Buy Co., Inc., and Costco Wholesale Corporation, | **DEFENDANT COSTCO WHOLESALE CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6) AND MEMORANDUM IN SUPPORT** |
| Defendants. | |

# TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................1

II.    STATEMENT OF ISSUES ...................................................................3

III.   STATEMENT OF FACTS ....................................................................3

IV.    LEGAL STANDARD ..........................................................................5

V.     ARGUMENT........................................................................................7

       1.    *Alice*/*Mayo* Step 1: Are the Asserted Claims Directed to an
             Abstract Idea?..........................................................................8

       2.    *Alice*/*Mayo* Step 2: Do the Asserted Claims Provide an
             Inventive Concept?.................................................................15

       3.    The Patent Office Has Already Found Similar Related Claims
             Ineligible under Section 101. ................................................18

       4.    The Remaining Claims Are Also Ineligible..........................20

       5.    There Are No Issues of Fact or Claim Construction That Would
             Preclude Dismissal under Section 101...................................23

       6.    Allegations Added in the Amended Complaint Do Not Present
             Any Factual Issues or Support a Finding of Eligibility. ......24

VI.    CONCLUSION...................................................................................27

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l,*
573 U.S. 208 (2014)......................................................................................*passim*

*Apple, Inc. v. Ameranth, Inc.,*
842 F.3d 1229 (Fed. Cir. 2016) ..........................................................................21

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)....................................................................................6, 25

*ASK Sydney, LLC v. Amazon.com Servs., LLC,*
688 F. Supp. 3d 403 (W.D. Tex. Aug. 14, 2023) ................................................19

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC,*
915 F.3d 743 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 855 (2020)....................23

*BASCOM Global Internet Servs. v. AT&T Mobility LLC,*
827 F.3d 1341 ...................................................................................................15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..............................................................................................5

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018) ............................................................................7

*Beteiro, LLC v. Draftkings Inc.,*
104 F.4th 1350 (Fed. Cir. 2024) .......................................................................8, 9

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018) ....................................................................17, 18

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019) .....................................................................23, 26

*Content Extraction & Transmission LLC v. Wells Fargo Bank,*
776 F.3d 1343 (Fed. Cir. 2014) .......................................................................7, 8

*Diamond v. Diehr,*
450 U.S. 175 (1981) ..........................................................................................25

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ...........................................................10, 11, 16

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016) ..........................................................................7

*IBM v. Zillow Group, Inc.*,
    50 F.4th 1371 (Fed. Cir. 2022) .....................................................................13, 25

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ........................................................................25

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017) ........................................................................16

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)) ......................................................................26

*Mayo Collaborative Servs. v. Prometheus Labs.*,
    566 U.S. 66 (2012) ..............................................................................................6

*Mobile Acuity Ltd. v. Blippar Ltd.*
    110 F.4th 1280 (Fed. Cir. 2024) .................................................................11, 12

*Network Architecture Innovations LLC v. CC Network Inc.*,
    No. 2:16-CV-00914-JRG, 2017 U.S. Dist. LEXIS 59310 (E.D.
    Tex. Apr. 18, 2017)..............................................................................................7

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ..................................................................*passim*

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ........................................................................25

*Thompson v. City of Waco*,
    764 F.3d 500 (5th Cir. 2014) ..............................................................................6

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) ............................................................................7

*Uniloc USA, Inc. v. ADP, LLC*,
    772 Fed. Appx. 890 (Fed. Cir. 2019)..................................................................4

**Statutes**

35 U.S.C. § 101 .................................................................................*passim*

35 U.S.C. § 154 ...........................................................................................3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................................................................*passim*

Fed. R. Civ. P. 12(e).....................................................................................1

## I.    INTRODUCTION

Plaintiff Global Connect Technology, Inc. ("Plaintiff") filed its Original Complaint for Patent Infringement (Dkt. No. 1)[1] ("Original Complaint") alleging infringement of U.S. Patent No. 7,246,128 ("'128 Patent"). Complaint, ¶¶ 9 & 29. But the '128 Patent is invalid under 35 U.S.C. § 101 and the *Alice*/*Mayo* test. *See Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The '128 Patent purports to cover online search technology, but it is invalid because it is directed solely to the abstract idea of retrieving and displaying data. Accordingly, Costco moved to dismiss. Dkt. No. 11. Rather than respond, Plaintiff made minor and inconsequential edits to its Original Complaint and filed its First Amended Complaint for Patent Infringement Against Costco Wholesale Corporation (Lead Case Dkt. No. 26) ("Amended Complaint") on March 14, 2025. Amended Complaint, ¶¶ 9 & 34. Additional allegations in the Amended Complaint cannot make the invalid patent claims of the '128 Patent valid. Defendant Costco Wholesale Corporation ("Costco") respectfully renews its request for dismissal of Plaintiff's Amended Complaint under Rule 12(b)(6).[2]

---

[1] Docket numbers refer to Member Case No. 2:24-cv-00649-JRG unless otherwise noted.

[2] Plaintiff's Amended Complaint is deficient for additional reasons, including failing to adequately state an infringement claim under Rule 12(b)(6) and being vague and ambiguous under Rule 12(e). For example, Exhibit A to the Amended Complaint fails to set forth a clear basis for the alleged infringement. The threshold

Courts have found similar claims which, like the '128 Patent, involve retrieving and displaying data too abstract for patenting under Section 101. The '128 Patent claims no inventive concept to transform the abstract idea into patentable subject matter. The claims merely implement the abstract idea using generic computer components like processors and databases. In fact, a subsequent application in this same patent family, which was examined *after* the *Alice* decision, was abandoned after being rejected on Section 101 grounds. This further suggests that the subject matter of the '128 Patent is abstract.

Even with the new allegations in the Amended Complaint, there are no factual disputes to preclude early dismissal. If anything, the Amended Complaint confirms that Plaintiff's interpretation of the '128 Patent claims would cover any database or even a spreadsheet, impermissibly preempting vast swaths of activities that cannot be patented because they are the basic tools of scientific and technological activity. The application of the law is clear: the claims of the '128 Patent are ineligible under Section 101 and the *Alice*/*Mayo* test. Plaintiff's Amended Complaint must be dismissed so that the parties and Court expend no further resources litigating an invalid patent.

---

issue is the invalidity of the '128 Patent, but Costco reserves the right to bring additional motions to challenge the sufficiency of the Amended Complaint if it is ultimately required to respond to the specific allegations in the Amended Complaint.

## II.    STATEMENT OF ISSUES

(1)    Should Plaintiff's Amended Complaint be dismissed because the Asserted Claims are directed to ineligible subject matter under 35 U.S.C. § 101 and the *Alice*/*Mayo* test, and because the Asserted Claims do not provide any inventive concept?

## III.    STATEMENT OF FACTS

Plaintiff filed its Original Complaint on August 8, 2024, and Costco was served on December 4, 2024 (Dkt. Nos. 1 & 4). Plaintiff filed the Amended Complaint on March 14, 2025. Lead Case Dkt. No. 26. Like the Original Complaint, Plaintiff's Amended Complaint alleges infringement of claim 21 of the '128 Patent. Complaint, ¶¶ 9, 34, & Ex. A. Substantive changes to the Amended Complaint include the addition of paragraphs 18, 19, and 24-26.

The '128 Patent was filed on June 12, 2003, (claiming priority to U.S. Provisional Application No. 60/388,095 filed on June 12, 2002), and issued on July 17, 2007. '128 Patent, p. 1. The '128 Patent expired on or around June 13, 2024. *See id.* & 35 U.S.C. § 154. Notably, the '128 Patent issued seven years *before* the Supreme Court's landmark *Alice* decision. A subsequent case *in the same patent family that shares a specification* with the '128 Patent and was examined *after* the *Alice* decision – U.S. Patent Application No. 13/857,807 ("'807

Application") – and was abandoned after the claims were rejected under Section

101.[3] *See* Exs. A & B.

The '128 Patent is titled "Data Storage, Retrieval, Manipulation and Display Tools Enabling Multiple Hierarchical Points of View." '128 Patent, p. 1. The '128 Patent states that it relates to "the field of computers, and more particularly to the field of computer database systems and methods." '128 Patent, 1:14-16.

In the background of the disclosure, the '128 Patent states that there is a need for "a system that permits the storage, retrieval and manipulation of a given set of data in different contexts." '128 Patent, 2:15-17. More specifically, the '128 Patent states that "a system is needed that permits a user to establish a point of view, such as via a hierarchy, and that allows the user to retrieve, manipulate, and display data according to that point of view." '128 Patent, 2:17-20. The '128 Patent states:

> As used herein, "point of view" or "individual point of view" can reflect a particular individual's or entity's way of looking at data within a frame of reference. The point of view can be thought of as ***a filter for data within the frame of reference***. Points of view can embody an individual's view of the significance and interest of particular data. Set

---

[3] The prosecution history of a patent is a matter of public record, which is subject to judicial notice. *Uniloc USA, Inc. v. ADP, LLC*, 772 Fed. Appx. 890, 898 n.3 (Fed. Cir. 2019). U.S. Patent Application No. 13/857,807 was filed on April 5, 2013 as a continuation in the same family as the '128 Patent. In a final Office Action dated April 29, 2016, all pending claims were rejected as abstract under Section 101 and *Alice*. The application was then abandoned for failure to respond to the Office Action.

theory can be used to build a point of view, asking with respect to a data element, for example, whether it is a member of a particular set or whether it is an exact match, or partial match, to another element or item.

'128 Patent, 12:17-26 (emphasis added).

Claim 21 of the '128 Patent recites "[a] system for enabling multiple hierarchical points of view." The system comprises:

- "a host processor"

- "a user interface controlled by the host processor for inputting points of view to the system"

- "a connections generator controlled by the host processor and in communication with the user interface to receive the points of view and generate connections between elements in the points of view and metadata of data sources"

- "a connections database operated on by the connections generator in generating the connection and having a data structure including degrees of matching between data elements in the connections database and the metadata" and

- "matching applications controlled by the host processor and operating on the data sources to determine sets of data elements in the data sources having at least pre-selected degrees of matching with the elements in the points of view, the user interface displaying the data elements and degrees of matching for the data elements according to the points of view."

## IV.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads

enough facts to allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014). (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Where the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Iqbal*, 556 U.S. at 678-79.

Under Section 101, it is well settled that laws of nature, natural phenomena, and abstract ideas are not patentable. *See Alice*, 573 U.S. at 216. These categories are ineligible for patenting because "they are the basic tools of scientific and technological work," which are "free to all [people] and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 71 (2012) (citations omitted).

*Alice* sets forth a two-step test to determine whether a claim is invalid under Section 101 as being solely directed to an abstract idea. *Alice*, 573 U.S. at 217. At Step 1, courts determine whether the claims are directed to a law of nature, a natural phenomenon, or an abstract idea. *Id*. If it is determined that the claims are directed to one of these categories, then the analysis proceeds to Step 2, where courts determine whether the claims are nonetheless eligible because they contain an inventive concept that amounts to significantly more than the law of nature, natural phenomenon, or abstract idea. *Id*. at 217-18.

Eligibility under Section 101 is a question of law, which may be based on underlying facts. *See, e.g., Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). A claim can be invalidated under Section 101 on a Rule 12(b)(6) motion "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). Claim construction is not required prior to ruling on a Rule 12(b)(6) motion. *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming grant of dispositive motion prior to claim construction); *accord Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-20 (Fed. Cir. 2014).

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). This Court likewise has granted motions to dismiss for invalidity under Section 101. *See, e.g., Network Architecture Innovations LLC v. CC Network Inc.*, No. 2:16-CV-00914-JRG, 2017 U.S. Dist. LEXIS 59310 (E.D. Tex. Apr. 18, 2017).

## V.    ARGUMENT

The '128 Patent should be found invalid under Section 101, and Plaintiff's Amended Complaint should be dismissed. Accepting the factual allegations in the

Amended Complaint as true, and construing the pleadings in the light most favorable to the Plaintiff, Plaintiff still fails to state a claim upon which relief can be granted because the Asserted Claims are ineligible under Section 101. The '128 Patent is directed to retrieving and displaying data. None of the claims add an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 216. This motion discusses representative claim 21. The remaining claims are invalid for similar reasons.[4]

### 1. *Alice*/*Mayo* Step 1: Are the Asserted Claims Directed to an Abstract Idea?

At Step 1, courts consider the "focus of the claims" and "their character as a whole." *SAP*, 898 F.3d at 1167 (internal quotations and citations omitted). Here, claim 21 is directed to the abstract idea of retrieving and displaying data. The '128 Patent fails Step 1.

In the recent *Beteiro, LLC v. Draftkings Inc.* case, the Federal Circuit identified four "well-settled indicators of abstractness" at Step 1. 104 F.4th 1350,

---

[4] Courts need not individually address all claims where the asserted claims "are substantially similar in that they recite little more than the same abstract idea" and where one claim is representative. *See Content Extraction & Transmission LLC*, 776 F.3d at 1348. Here, the Amended Complaint specifically alleges only infringement of representative claim 21, and it is unclear what other claims (if any) are being asserted. Nonetheless, the remaining claims are shown below to be invalid too.

1355 (Fed. Cir. 2024). *First*, the Federal Circuit considered whether "the claims broadly recite generic steps of a kind [it has] frequently held are abstract." *Id*. These generic steps include, for example, "detecting," "generating and transmitting," "receiving a message," "determining," and "processing information." *Id*. *Second*, the Federal Circuit considered whether the claims use result-focused functional language, "containing no specificity about how the purported invention achieves those results." *Id*. at 1356. *Third*, the Federal Circuit considered whether "broadly analogous claims" have been held abstract. *Id*. *Fourth*, the Federal Circuit considered whether the claims can be analogized to "longstanding 'real-world' ('brick and mortar') activities." *Id*. Each of these "indicators of abstractness" are present in this case.

*First*, claim 21 broadly recites generic steps performed by generic computing components. For example, the claimed "user interface" is used for the generic operation of "inputting" data. The "connections generator" and the "connections database" are both used in relation to "generating" connections which appear to be standard database operations. The "matching applications" are used to "determine sets of data elements" which appears to simply consist of grouping data. Each of these operations are generic computing steps similar to the "generic steps" discussed in *Beteiro*.

*Second*, claim 21 uses result-focused functional language. For example, claim 21 fails to specify *how* the "connections generator" is used to "generate connections between elements in the points of view and metadata of data sources." Similarly, claim 21 fails to specify *how* the "matching applications" are used to "determine sets of data elements in the data sources having at least pre-selected degrees of matching with the elements in the points of view." Instead, the claim limitations are broadly focused on results while "containing no specificity about how the purported invention achieves those results." *Id*. at 1356.

*Third*, claim 21 is analogous to claims held abstract in other cases:

**Electric Power:** Claim 21 is similar to claims found abstract in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016). The claims in *Electric Power Group* were directed to "performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the results." *Id*. at 1351. A representative claim recited particular data received in "a plurality of data streams" and from other data sources, which is analyzed in real time to detect events. *Id*. at 1351-52. Results of the event analysis are displayed. *Id*. The Federal Circuit explained that the purported advance made by the claims "is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." *Id*. at

1354. Additionally, the focus of the claims was not on "an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Id*. The claims were found abstract at Step 1. *Id*.

Here, claim 21 is similarly directed to analyzing data and displaying the results. Like the claims in *Electric Power Group*, claim 21 performs operations related to data from multiple "data sources." For example, the claimed system includes "matching applications…to determine sets of data elements in the data sources having at least pre-selected degrees of matching with the elements in the points of view." Additionally, the claimed system provides a user interface, which displays "the data elements and degrees of matching for the data elements according to the points of view." In other words, the claimed system merely determines "elements" in data sources based on matching with "elements" in received points of view/filters, and the system displays these data elements in a user interface. This is strikingly similar to the subject matter claimed in *Electric Power Group* of "collecting data from multiple data sources, analyzing the data, and displaying the results." 850 F.3d at 1351. Like the claims in *Electric Power Group*, claim 21 does not claim any improvement to computers as tools – rather, it uses computers as a tool to implement an abstract idea.

**Mobile Acuity:** Claim 21 is also similar to claims found abstract in *Mobile Acuity Ltd. v. Blippar Ltd.*, 110 F.4th 1280 (Fed. Cir. 2024). In *Mobile Acuity*, the

claims related to storing information so that it can be accessed using a captured image. *Id*. at 1284. The Federal Circuit found that the claims "are directed to the abstract idea of receiving information, associating information with images, comparing the images, and presenting information based on that comparison." *Id*. at 1292. In finding the claims abstract, the Federal Circuit noted that it has "frequently held" that "***claims reciting generalized steps of collecting, analyzing, and presenting information, using nothing other than the conventional operations of generic computer components, are directed to abstract ideas***." *Id*. at 1293, (emphasis added). That perfectly describes the claim at issue here. The Federal Circuit rejected the patentee's argument that the claims were directed to an inventive concept that could not be found in the prior art because the Federal Circuit found that this was at best an indication that the claims were directed to a new abstract idea. *Id*. at 1294.

Like the claims in *Mobile Acuity*, claim 21 is directed to storing and retrieving information. Whereas the claims in *Mobile Acuity* relied on comparing image data, claim 21 uses matching of data elements in "points of view" and "data sources." These data elements and degrees of matching are displayed in a user interface. For the same reasons discussed in *Mobile Acuity*, claim 21 is abstract at Step 1. To the extent Plaintiff argues the claims recite limitations not found in the

prior art (a point which Costco does not concede), this would again at best only show that the claims are directed to a new abstract idea. *See id*. at 1294.

**IBM:** Claim 21 is also similar to claims found abstract in *IBM v. Zillow Group, Inc*., 50 F.4th 1371 (Fed. Cir. 2022). The claims in *IBM* were "directed to limiting and coordinating the display of information based on a user selection." *Id*. at 1378. A representative claim in *IBM* allows a user to input "a selection area" on a displayed map, and elements on the display are selected or deselected on the map based on the user input. *Id.* at 1375. The patentee argued that the claims improve "the ability of users to identify and analyze relevant data in otherwise large data sets." *Id*. at 1378. In rejecting this argument, the Federal Circuit found that "[i]dentifying, analyzing, and presenting certain data to a user is not an improvement specific to computing." *Id*. The Federal Circuit rejected the patentee's arguments regarding alleged inventiveness of the claims because the patentee had not made "plausible and specific allegations that any aspect of the claims is inventive." *Id*. at 1379.

Like in *IBM*, claim 21 recites an abstract way of displaying data based on a user input of a "point of view" (or filter) to display data "according to the points of view." The '128 Patent specification states that a "point of view" may be "an individual's view of the significance and interest of particular data." '128 Patent,

12:21-22.[5] In other words, the points of view correspond to a user's filter or search criteria and then may impact what information is displayed to the user. Alleged improvements of this kind are insufficient to prove a claim non-abstract, as discussed in *IBM*.

**_Fourth_**, claim 21 can be analogized to real-world, brick-and-mortar activities. As discussed above, claim 21 is broadly directed to retrieving and displaying data based on particular "points of view" or filters. Plaintiff's claim charts allege that the requirements of the "points of view" claim element are met, for example, where a "user can select both 'Apple' and 'HP' under the 'Brand' filter," or where product search results are filtered based on multiple product features, which Plaintiff interprets as using multiple "points of view." Amended Complaint, Ex. A, pp. 4 & 7-8. Assuming *arguendo* that this interpretation is correct, retrieving data across categories and presenting or displaying those options is a longstanding real-world activity. Indeed, a merchant can *manually* retrieve both Apple and HP laptops and display those options to a customer. A librarian can manually retrieve books by Edgar Allan Poe *and* by Ernest Hemingway, or books categorized by genre (e.g., mystery) *and* by subject (e.g.,

---

[5] Plaintiff's claim chart (Amended Complaint, Ex. A) cites to this portion of the disclosure in relation to the claimed "points of view." While Costco must accept Plaintiff's contentions for the purposes of this motion, Costco does not concede Plaintiff's interpretation of the claims, and Costco reserves all rights.

dogs) and display those results to a patron. A hotelier can manually identify rooms having multiple beds *and* a balcony and present those options to a guest. These are longstanding real-world activities that fit Plaintiff's interpretation of the claims.

The Asserted Claims are abstract at Step 1 of the *Alice*/*Mayo* test because the well-settled indicators of abstractness discussed in *Beteiro* are present here. The claims are solely directed to retrieving and displaying data based on a user input, which is abstract under *Electric Power Group*, *Mobile Acuity*, and *IBM*.

### 2. *Alice*/*Mayo* Step 2: Do the Asserted Claims Provide an Inventive Concept?

At Step 2, the Asserted Claims do not provide any inventive concept to transform the abstract idea into patent-eligible subject matter. An inventive concept must be ***significantly more*** than the abstract idea and cannot be a mere instruction to implement the abstract idea using generic computer components. *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349. "[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 223. Likewise, implementing an abstract idea in a "particular technological environment" is insufficient to establish patent eligibility. *See id.* at 222.

Here, the Asserted Claims implement the abstract idea using generic components, including a "host processor," "a user interface," and a "connections database," as in claim 21 of the '128 Patent. Processors and databases were

insufficient to provide an inventive concept in *SAP*. In *SAP*, the Federal Circuit noted that "[s]ome of the claims require various databases and processors," but "these limitations require no improved computer resources [patentee] claims to have invented, just already available computers, with their already available basic functions, to use as tools in executing the claimed process." 898 F.3d at 1169-70. The generic components recited in claim 21 amount to nothing more than available computer components used to execute an abstract idea. This is insufficient to provide an inventive concept at Step 2.

The result-focused limitations of the Asserted Claims do not specify ***how*** the indicated results are achieved. Where a claim fails to explain the mechanism by which a recited result is accomplished, the claim does not provide an inventive concept under Step 2. *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331-32 (Fed. Cir. 2017); *See also Electric Power Group* 830 F.3d at 1355 (Step 2 inquiry turns on "requirements for *how* the desired result is achieved"). For example, claim 21 does not provide specifics on how "connections" are generated by the "connections generator" or how the elements are determined by the "matching applications."

Aside from generic processor and database limitations, Plaintiff argues that "Costco's website uses multiple hierarchical points of view," allegedly in contrast to prior art technologies that use a single hierarchical point of view for searching.

*See* Dkt. No. 26-1, pp. 1-4. As discussed in Section 6 below, alleged improvements of this kind do not support a finding of eligibility because, at best, they amount to a new abstract idea. Additionally, even accepting Plaintiff's conclusory allegations as true, Plaintiff's interpretation of "points of view" does not provide significantly more than an abstract idea because the "points of view" essentially function like generic search terms or filters, which cannot credibly provide an inventive concept.

In this way, the Asserted Claims are similar to claims held abstract in *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018). In *BSG*, the claimed invention was found to result in "better user input" in relation to using a database in its ordinary capacity and the claims were found to be directed to "the abstract idea of having users consider historical usage information while inputting data." 899 F.3d at 1288. Patentee characterized the patents as being directed to an "improvement in database functionality" that encourages consistency in selecting parameters "for both entering and searching data," which allows a user to identify relevant data. *Id.* 1287-88. The Federal Circuit rejected arguments that the claims provided an inventive concept because the only feature alleged to be unconventional "simply restates what [the court] already determined is an abstract idea." *Id.* at 1291. "At *Alice* step two, it is irrelevant whether considering historical usage information while inputting data may have been non-routine or

unconventional *as a factual matter* [because] *[a]s a matter of law*, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *Id.* (emphasis added; citations omitted).

Here, Plaintiff commits the same error as the patentee in *BSG*. The "point of view" elements that Plaintiff identifies are even similar to those that were rejected in *BSG* because Plaintiff alleges that the claimed "points of view" are merely used as inputs to a user interface when searching for products. *See* Dkt. No. 26-1, pp. 7-8. As explained in *BSG*, even if an alleged improvement of this kind purports to be non-routine or unconventional *as a factual matter*, this is entirely irrelevant *as a matter of law* because the abstract idea itself cannot provide the inventive concept at Step 2. The claimed "points of view" are therefore insufficient, as a matter of law, to provide an inventive concept at Step 2 because they are fundamentally a part of the claimed abstract idea, <u>not</u> an inventive concept that is significantly more than the abstract idea itself.

The only limitations of the Asserted Claims beyond the abstract idea are generic components that are insufficient to transform the abstract idea into patent-eligible subject matter. The Asserted Claims are, therefore, ineligible.

### 3. The Patent Office Has Already Found Similar Related Claims Ineligible under Section 101.

The abandonment of the '807 Application after a Section 101 rejection is a further indication that the Asserted Claims are abstract. While the Patent Office's

analysis is not binding on this Court, it is a compelling indication that the Asserted Claims are abstract. *See ASK Sydney, LLC v. Amazon.com Servs., LLC*, 688 F. Supp. 3d 403, 417 (W.D. Tex. Aug. 14, 2023) (taking judicial notice of Patent Office rejections in the context of a 12(b)(6) motion).

For example, claims 6 and 7 of the rejected '807 Application recited limitations that are similar to claim 21 in the present case. Claim 6 was directed to "[a] category management system which can control storage, retrieval, modification and reporting on structured and unstructured data…" *See* Ex. A ('807 Application, Supplemental Amendment dated February 17, 2016), p. 3. Claim 6 included "a user interface for encoding a graphical representation of an individual point of view." *Id*. The claimed system comprised instructions to "receive input from a user defining the graphical representation [of the individual point of view]." *Id*. Additionally, claim 7 depended from claim 6 and further included limitations related to generating "a query" and displaying "results of the query in accordance with the graphical representation [of the individual point of view]." *Id*. The similarities between these claims and claim 21 of the '128 Patent are clear. Both are directed to the same abstract idea of retrieving and displaying data.

The Patent Office rejected all pending claims of the '807 Application as abstract. *See* Ex. B ('807 Application, Office Action dated April 29, 2016), pp. 9-11. Specifically, the Patent Office found that the claims did not "move beyond basic

'category information' and 'search for members," which is an abstract idea. *Id*. The Patent Office ***also*** rejected the claims for double patenting because they were "not patentably distinct from" claims 1, 21, 26, and 30 of the '128 Patent. *Id*. at pp. 12-13. The '807 Application was then abandoned for failure to respond to this Office Action.

The examiner of the '128 Patent unfortunately did not have the benefit of the *Alice* decision when the '128 Patent was allowed because the '128 Patent issued several years before *Alice*. But the rejection of the '807 Application on *Alice* grounds ***and*** double patenting grounds further supports the conclusion that the Asserted Claims are directed to unpatentable subject matter under *Alice*.

### 4.  The Remaining Claims Are Also Ineligible.

While the above analysis focuses on claim 21, which is the only claim discussed in the Amended Complaint, the remaining claims also fail the *Alice*/*Mayo* test.

Claims 22-25 depend from claim 21. They recite the same abstract idea discussed above, and they do not claim any inventive concept:

- Claim 22 recites a "communications application," which is claimed in a generic and functional way similar to the "matching applications" of claim 21.

- Claim 23 recites a "significance and interest processor," which is a generic computer component like the "host processor," and which is claimed as performing result-focused operations.

- Claim 24 recites "executable logic modules," which are used in relation to formatting results for output – that is, for displaying the data.

- Claim 25 recites examples of the "matching applications," which are similarly abstract.

None of the foregoing claims recite non-abstract subject matter or any inventive concept sufficient to transform the abstract idea of claim 21 into patentable subject matter. They merely add further conventional and generic features. *See Alice*, 573 U.S. at 223. At best the foregoing claims recite insignificant post-solution activity, which is insufficient to provide an inventive concept. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1242 (Fed. Cir. 2016).

Independent claim 1 recites "[a] computer program tangibly stored on a computer-readable medium and configured to cause a computer to enable a user interface for encoding a graphical representation of an individual point of view (iPOV)." Like claim 21, claim 1 is directed to an abstract way of retrieving and displaying data. This abstract idea is implemented using similarly generic components, including "a user interface."

Claims 2-18 depend from claim 1, and they are ineligible for similar reasons discussed above with reference to claims 22-25. These claims are directed to the same abstract idea, and they merely add generic computer components, processing operations, and post-solution activity that is insufficient to transform the abstract idea into patentable subject matter.

Independent claim 19 recites "[a] computer-readable medium containing data structure for defining the set theory used to describe sets of data in the data structure." By its own terms, claim 19 is merely directed to a particular way of structuring data, and the data structure is used to present "at least one of the set members and the degrees of matching" to a user. Claim 19 is directed to the same abstract idea as claim 21, and it is abstract for the same reasons. Claim 20 depends from claim 19, and it is similar to claim 25 discussed above.

Independent claim 26 recites "[a] computer program tangibly stored on a computer-readable medium and configured to cause a computer to enable searching of data records." It is directed to the same abstract idea as claim 21, and it recites similarly generic components, including "a connections generator" and "a connections database."

Claims 27-29 depend from claim 26. These claims are directed to the same abstract idea, and they merely add generic computer components, processing operations, and post-solution activity that is insufficient to transform the abstract idea into patentable subject matter.

Independent claim 30 recites "[a] computer program tangibly stored on a computer-readable medium and configure[d] to cause a computer to enable a user interface for encoding a configuration of a similarity engine." The claimed computer program merely displays particular data to a user, similar to the system

of claim 21. Claim 30 recites similarly generic components, including "a computer" and "a user interface." Claim 31 depends from claim 30 and merely recites additional limitations regarding how data is presented to a user similar to claims 22-25.

### 5. There Are No Issues of Fact or Claim Construction That Would Preclude Dismissal under Section 101.

A claim can be invalidated under Section 101 on a Rule 12(b)(6) motion "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP*, 898 F.3d at 1166. Here, no factual issues preclude dismissal under Section 101. The Amended Complaint's conclusory statement that the '128 Patent is "valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code" (Amended Complaint, ¶ 11), is insufficient to create a factual dispute. Dismissal under Section 101 is appropriate where, as here, the claims and specification confirm the lack of an inventive concept, regardless of allegations in the complaint or purported extrinsic evidence to the contrary. *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 776 (Fed. Cir. 2019); *see also Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 755-56 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 855 (2020) (holding that the district court properly dismissed the complaint because plaintiff's "expert declaration made allegations inconsistent with the [patent-in-suit]").

Costco has made its arguments accepting the allegations in the Amended Complaint as true and using *Plaintiff's* own claim interpretations. Even if the term "points of view" would need to be construed prior to trial, Costco has used Plaintiff's interpretation of "points of view" as a filter or search criteria and there is no construction of this term that would render claim 21 non-abstract (Plaintiff certainly does not propose one). Regardless of the exact construction of any claim limitation, claim 21 is solely directed to the abstract idea of retrieving and displaying data, and claim 21 fails to provide any inventive concept for the reasons discussed above.

The Court can and should hold the Asserted Claims invalid under Section 101 and *Alice* because no construction of the claims is needed to reach this conclusion, and because the claims are abstract under any interpretation.

### 6. Allegations Added in the Amended Complaint Do Not Present Any Factual Issues or Support a Finding of Eligibility.

The Amended Complaint adds paragraphs 18, 19, and 24-26, and conclusory statements that the claims are "unconventional," "technically improved," or an advancement over the prior art. Notably, additions to the Amended Complaint largely duplicate allegations Plaintiff already made in Exhibit A of the Original Complaint. For example, paragraphs 18 and 19 of the Amended Complaint contain allegations regarding an eBay search feature pre-

dating the '128 Patent, which was previously discussed in Exhibit A of the Original Complaint. Other additions to the Amended Complaint consist of legal conclusions, which the Court need not accept as true on a Rule 12(b)(6) motion. *See Ashcroft* 556 U.S. at 678. Accepting the factual allegations (<u>not</u> the legal conclusions) of the Amended Complaint as true for purposes of this motion, the claims are still abstract and contain no inventive concept.

Plaintiff's allegations regarding novelty are no help. Alleged novelty "is of no relevance in determining whether the subject matter of a claim falls within the §101 categories of possibly patentable subject matter." *Diamond v. Diehr*, 450 U.S. 175 (1981); *see also Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016). The Federal Circuit has explained that "a claim for a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). Additionally, the Court "need not accept a patent owner's conclusory allegations of inventiveness." *IBM*, 50 F. 4th at 1379.

The Amended Complaint's allegation that the claims include improvements related to "computer database systems and methods" do not prevent dismissal. Amended Complaint, ¶ 12. In *SAP*, the Federal Circuit rejected arguments that similar alleged advances supported a finding of eligibility because, though the claims required various databases and processors, they required "no *improved*

computer resources…just already available computers, with their already available basic functions, to use as tools in executing the claimed process." 898 F.3d at 1169-70, (emphasis added).[6]

The Amended Complaint reveals that Plaintiff interprets the '128 Patent to impermissibly preempt vast categories of activity. Preemption is a fundamental concern underlying Section 101 – that is, the principle that one cannot have a patent monopoly on an abstract idea because monopolizing the basic tools of scientific and technological work impedes innovation. *See Alice*, 573 U.S. at 216 (citations omitted). Courts will consider the breadth of the claims in a Section 101 analysis to determine whether the claims would monopolize an abstract idea. *ChargePoint*, 920 F.3d at 768-69 (citing *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015)). While the Amended Complaint identifies eBay's online search functionality alleged to pre-date the '128 Patent (*see* Amended Complaint, ¶ 18), the claim language is not limited to *online* searching. Plaintiff interprets the claims to broadly preempt conventional techniques related to filtering and displaying data, such as techniques that could be implemented using traditional databases, offline searching within a computer's

---

[6] The patent invalidated in *SAP* had an earlier priority date than the '128 Patent, which confirms the self-evident point that databases were well known long before the '128 Patent. *See id*. at 1163.

file system, or spreadsheet-based operations. The alleged breadth of the claims confirms that they are abstract.

Plaintiff's attempt to evade an early dismissal by adding conclusory allegations to the complaint fails because the Amended Complaint does not present any factual or legal issues that would preclude dismissal on a 12(b)(6) motion.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff has failed to state a claim upon which relief can be granted because the Asserted Claims are invalid under 35 U.S.C. § 101 and the *Alice*/*Mayo* test. The Court should therefore dismiss the Amended Complaint with prejudice.

DATED: March 28, 2025.

DORSEY & WHITNEY LLP

By /s/ Case Collard
Case Collard, Colorado Bar No. 40692
collard.case@dorsey.com
Dorsey & Whitney LLP
1400 Wewatta Street
Suite 400
Denver, CO 80202-5549
Telephone: (303) 352-1116
Fax: (303) 629-3450

GILLAM & SMITH LLP

Melissa R. Smith
melissa@gillamsmithlaw.com

Gillam & Smith LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903)934-8450
Fax: (903)934-9257

James Travis Underwood
travis@gillamsmithlaw.com
Gillam & Smith LLP
102 N. College, Suite 800
Tyler, TX 75702
Telephone: (903)934-8450
Fax: (903) 934-9257

*Attorneys for Defendant*
*Costco Wholesale Corporation*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed electronically on March 28, 2025 pursuant to Local Rule CV-5(a) and has been served on all counsel who have consented to electronic service. Any other counsel of record will be served by first class U.S. mail on this same date.

*/s/ Stacy Starr*
Stacy Starr

## CERTIFICATE OF COMPLIANCE WITH THE COURT'S 35 U.S.C. § 101 MOTION PRACTICE ORDER

_____    ~~The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.~~

__X__    The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

*/s/ Case Collard*
Case Collard