IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **Global Connect Technology, Inc.,** | **Case No. 2:24-cv-00647-JRG** |
| **Plaintiff,** | |
| **v.** | **JURY TRIAL DEMANDED** |
| **Christie's International PLC and Christie Manson & Woods Limited,** | **LEAD CASE** |
| **Defendants.** | |
| **Global Connect Technology, Inc.,** | **Case No. 2:24-cv-00648** |
| **Plaintiff,** | |
| **v.** | **JURY TRIAL DEMANDED** |
| **Best Buy Co., Inc. and BestBuy.com, LLC,** | **MEMBER CASE** |
| **Defendants.** | |
| **Global Connect Technology, Inc.,** | **Case No. 2:24-cv-00649-JRG** |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| **v.** | |
| **Costco Wholesale Corporation,** | **MEMBER CASE** |
| **Defendant.** | |

<u>**PLAINTIFF'S OPPOSITION TO**</u>
<u>**COSTCO WHOLESALE CORPORATION'S MOTION TO DISMISS [DKT 36]**</u>

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................................. 1

II.   LEGAL STANDARDS ........................................................................................................ 1

III.    ARGUMENT ...................................................................................................................... 3

   A.    The Asserted Claims Are Patent-Eligible Under 35 U.S.C. § 101 ................................. 3

   B.    Costco's Eligibility "Analysis" is Defective ................................................................ 14

   C.    Claim Construction ...................................................................................................... 21

IV.   Conclusion ........................................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121, 1128 (Fed. Cir. 2018) .................................................................................2

*Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) ......................................2, 18

*Alice*, 134 S. Ct. at 2355 .......................................................................................... passim

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016) .........9, 12

*Ancora Techs., Inc. v. HTC America, Inc.*,
  908 F.3d 1343, 1345, 1348 (Fed. Cir. 2018) ......................................................................16

*Bascom Global Internet Svcs, Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341, 1350 (Fed. Cir. 2016) ..........................................................................12, 20

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ....................................2, 9, 12, 14

*Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012) ....................................1

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) .............................4, 12

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343, 1347-48 (Fed. Cir. 2014) ......................................................................2, 17

*CyboEnergy, Inc. v. Hoymiles Power Elec. USA, Inc.*,
  2024 WL 1219725 at *2 (E.D. Tex. March 20, 2024) ..........................................................4

*Data Engine v. Google*, 906 F.3d 999, 1007-1008 (Fed. Cir. 2018) ........................................16

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258-59 (Fed. Cir. 2014) ...............12

*DigitalDoors, Inc. v. Cathay Bank*, No. 2:24-CV-00312-JRG-RSP,
  2025 WL 950073, at *1 (E.D. Tex. Mar. 28, 2025)............................................................21

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ...................................2

*Entropic Comms., LLC v. Charter Comms. Inc.*,
  2023 WL 8535214 at *3 (E.D. Tex. 2023) ...................................................................17, 18

*Finjan v. Blue Coat Systems*, 879 F.3d 1299, 1304-05 (Fed. Cir. 2018) .................................16

*Gree Inc. v. Supercell Oy*, No. 2:19-cv-00161-JRG-RSP,
  2019 U.S. Dist. LEXIS 225935, at *1 (E.D. Tex. Dec. 6, 2019) ..........................................3

*ILife Techs., Inc. v. Nintendo of America, Inc.,*
   2021 WL 117027 at *2 (Fed. Cir. 2021) ........................................................14

*Infernal Tech. LLC v. Sony Interactive Entertainment LLC,*
   2021 WL 5804262 at FN. 3 (E.D. Tex. 2021) ................................................19

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 71 (2012) ......................................19

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016) ............................2

*MyMail, Ltd. v. ooVoo, LLC,* 934 F.3d 1373, 1379 (Fed. Cir. 2019) ...................................1, 22

*Pantech Corp. v. LG Elecs. Inc.*, No. 5:22-CV-113-RWS-JBB,
   2023 WL 6065092, at *8 (E.D. Tex. Aug. 21, 2023) .....................................17

*Phoenix Licensing, L.L.C. v. CenturyLink, Inc.*, No. 2:14-cv965-JRG-RSP,
   2015 WL 5786582, at *2 (E.D. Tex. Sept. 30, 2015) ....................................21

*PPS Data,* 404 F.Supp.3d at 1040-41 ........................................................9, 12, 14, 20

*R2 Sol'ns v. American Airlines, Inc.,* 2022 WL 17477543 at 2 (E.D. Tex. 2022) .......................3

*Smartflash LLC v. Apple, Inc.,* 2015 WL 11090901 at *8 (E.D. Tex. 2015) ...........................17

*SRI Int'l, Inc. v. Cisco Sys., Inc.,* 930 F.3d 1295, 1304 (Fed. Cir. 2019) ..............................9, 16

*TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278, 1292-93 (Fed. Cir. 2020) ........................14, 16, 18

*Tiare Tech. v. Whataburger Restaurants,* 2023 WL 2733348 at *7 (E.D. Tex. 2023) ....................4, 20

*Tiare Tech., Inc. v. Dine Brands Glob., Inc.*, No. 2:22-cv-00490-JRG-RSP,
   2024 U.S. Dist. LEXIS 28023 (E.D. Tex. Jan. 11, 2024) ...............................3

*Zilkr Cloud Techs. v. Cisco Systems,* 2023 WL 4281746 at *2 (E.D. Tex. 2023) ......................3

**Statutes**

35 U.S.C. § 101 ............................................................................................... passim

**Rules**

Fed. R. Civ. P. 12(b)(6) ..............................................................................1, 3, 4

## I.    INTRODUCTION

Global Connect Technology, Inc. ("Global Connect" or "Plaintiff") respectfully submits this Brief in Opposition to Defendant Costco Wholesale Corporation's ("Costco" or "Defendant") Motion to Dismiss [Dkt. 36] ("Costco's Motion").  The instant matter is one of the three above consolidated cases. Of those, and despite the ubiquitous presence of § 101 Motions in nearly all cases filed in the decade since *Alice*, only Costco has endeavored to try it with the Asserted Patents and in the face of the First Amended Complaint [Dkt. 26] ("FAC"), which articulates a multitude of factual bases in support of eligibility.  Of course, no such motions have been filed by the other consolidated defendants because the boilerplate arguments offered here by Costco are not convincing and the claims of the Asserted Patents are plainly eligible.  Nevertheless, and as shown in greater detail herein below, the Court should make quick work in not only summarily denying Costco's Motion, but in affirmatively holding the Asserted Claims to be: (i) not directed to abstract ideas; and (ii) sufficiently inventive even beyond being non-abstract.

## II.    LEGAL STANDARDS

A party may move to dismiss an action for a "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, a court assumes all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). Patent eligibility under 35 U.S.C. § 101 may be determined on a Rule 12 motion, but only when there are no factual allegations that, if taken as true, prevent resolving the eligibility question as a matter of law. *MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019).

To determine whether claims contain patent-eligible subject matter, courts apply the Alice two-step framework. First, the court "determine[s] whether the claims at issue are directed to a patent-

ineligible concept," such as an abstract idea. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). To do so, the court looks to the claims' "character as a whole." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). While all claims embody abstract ideas and other ineligible subject matter at some level, the court's task is to examine "whether the claims [] focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

Second, if the challenged claims recite a patent-ineligible concept, the court then "consider[s] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Alice*, 134 S. Ct. at 2355. This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014).

The Federal Circuit has explained that "[w]hile the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018). For example, "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that must be "proven by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Additionally, specific improvements described in a patent specification, "to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Id.* at 1369.

Courts in this district routinely deny Rule 12 motions to dismiss on § 101. *E.g., Gree Inc. v. Supercell Oy*, No. 2:19-cv-00161-JRG-RSP, 2019 U.S. Dist. LEXIS 225935, at *1 (E.D. Tex. Dec. 6, 2019) (denying motion because Defendant did "not meet its Rule 12(b)(6) burden of showing the patents are invalid under 35 U.S.C. § 101"); *Tiare Tech., Inc. v. Dine Brands Glob., Inc.*, No. 2:22-cv-00490-JRG-RSP, 2024 U.S. Dist. LEXIS 28023 (E.D. Tex. Jan. 11, 2024) (denying motion because claims passed both *Alice* steps).

### III.    ARGUMENT

#### A.  The Asserted Claims Are Patent-Eligible Under 35 U.S.C. § 101

Costco's Motion raises the now customary argument that all Asserted Claims are invalid because they allegedly fail to recite patent-eligible subject matter.  Costco's Motion is premised on a gross oversimplification of the Asserted Claims and the underlying premise that virtually no invention remotely relating to a data management can be patent eligible.  Costco's Motion, however, fails on the merits and must be denied.

First and foremost is the obvious fact that this issue is presented to the Court at the pleading stage. As such, the Court is left with zero developed record from which it could possibly assess what was, and what was not, well-understood, routine, and conventional in the art *as of June 2002*, not to mention a lack of familiarity with the disclosures and an absence of claim construction.  For all of the reasons this Court has previously outlined, *see, e.g., Zilkr Cloud Techs. v. Cisco Systems,* 2023 WL 4281746 at *2 (E.D. Tex. 2023) (Payne; Report and Recommendation) ("a definitive ruling on eligibility before claim construction is only warranted in narrow circumstances, making such a ruling the exception rather than the rule"); *see also R2 Sol'ns v. American Airlines, Inc.,* 2022 WL 17477543 at 2 (E.D. Tex. 2022) (Mazzant) ("Indeed, it will ordinarily be desirable – and often necessary – to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character

of the claimed subject matter"), the Asserted Claims here cannot and should not be summarily invalidated simply because Defendant refuses to accept the non-abstract nature of, and numerous inventive concepts captured in, the Asserted Claims. *See, e.g., Tiare Tech. v. Whataburger Restaurants,* 2023 WL 2733348 at *7 (E.D. Tex. 2023) (Payne; Report and Recommendation) (denying motion to dismiss) ("Recognizing the limitations on the court's ability to review evidence outside of the complaint at this stage, the defendants have not presented evidence to rebut [plaintiff's] claim that the patents in suit achieve an unconventional result.  For these reasons, the motions must be denied").

As the Court is well aware, the Asserted Claims are presumptively novel and non-obvious, presumptively drawn to patent-eligible subject matter, and presumptively properly examined and allowed by the Examiner(s) at the United States Patent Office.  *See, e.g., Cellspin Soft, Inc. v. Fitbit, Inc.,* 927 F.3d 1306, 1319 (Fed. Cir. 2019).  Moreover, at the pleading stage, the Court is required by law not only to accept all factual allegations in the operative Complaint as true, but also to draw all reasonable inferences in the patentee's favor.  *CyboEnergy, Inc. v. Hoymiles Power Elec. USA, Inc.,* 2024 WL 1219725 at *2 (E.D. Tex. March 20, 2024) (further recognizing: "In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted").  Here, just as in the *Cellspin* case, the Complaint contains a multitude of specific and plausible statements of fact establishing the non-abstract nature of the Asserted Claims.

More specifically, the FAC alleges that, as of the Date of Invention in June 2002:

Before the inventions of the '128 Patent, the advent of the computer has permitted dramatic increases in the capability to store and manipulate data. The development of computer networks, such as the Internet, has provided unprecedented access to data. However, the proliferation of data does not necessarily maximize the usefulness of that data. In fact, proliferation of data can, in some circumstances, even serve as an obstacle to clear understanding, such as by obscuring connections between data or burying the most relevant data among a large amount of irrelevant data. See '128 Patent, Col. 1, ll. 21-30.

Methods and systems are needed to assist users in making more effective use of data. One general way to make more effective use of data is to provide an organizational structure

for the data. That is, data may be more easily understood if it is stored and presented according to a particular point of view. One way of representing an organizational structure or a point of view is a hierarchy. One example of such a hierarchy is a "drill down" hierarchy in which each level of a hierarchy represents related subcomponents of the next higher level of the hierarchy, with related elements of the various levels of the hierarchy being connected by lines or arrows. Representing data elements via a hierarchy can improve utilization of the data, because the data can be found, examined and manipulated based on its location in the hierarchy. For example, a simple hierarchy for personal information might include high level fields of "name" and "address," with second level fields of "first, last and middle" for "name" and "street number, street name, city, state and zip code" for "address." Systems and methods exist for storing data related to such a hierarchy. Creating connections between available data and the hierarchy categories while using the hierarchy to focus attention on the distinguishing features thus allows the user to impose some meaning on the data relative to other data related to the same hierarchy. See '128 Patent, Col. 1, ll. 31-54.

Conventional database systems and methods can be subject to a number of problems. Primarily, people change the data structures very slowly, many times as a means of implementing change controls. If the structures underlying the data can be built in such a way that based on one's focus area the data relationships show up differently, then the system can exhibit rigor in validating the storage of information while providing exceptional manipulation and analysis capabilities. Though current database technology supports different views of the same data, this is not the same as providing different contexts for acting on the data. Current technology provides views that act as censors, blotting out information considered irrelevant to the defined view. See '128 Patent, Col. 1, ll. 55-67.

It can be suggested that the same data may have dramatically different meaning and significance depending on the point of view of the person, group, or agent who is using the data. For example, a zip code might be highly relevant to a party wishing to send a letter but irrelevant to a party seeking driving directions to a particular location. Such a simple example may not present a major problem because the user can simply ignore the zip code, but when uses of the same data are in increasingly different contexts, conventional database methods and systems are increasingly ineffective at providing useful database functions for the different contexts. As a result, users typically build distinct databases for different uses of the data, even though the data content may overlap substantially. See '128 Patent, Col. 2, ll. 1-14.

As an example, below is eBay's implementation prior to US 7,246,128. eBay's prior implementation was a simplistic drill-down menu that utilized a single hierarchical point of view (i.e. the user could only search for a single item within a category). This was the state of the art at the time of invention.



https://web.archive.org/web/20000229115826/http://pages.ebay.com/search/items/search.html

19.    In this example prior art implementation, only one item could be chosen under the category "Category" (e.g. "Antiques & Art"), representing a single hierarchical point of view, as shown below:



https://web.archive.org/web/20000229115826/http://pages.ebay.com/search/items/search.html

The inventors of the '128 Patent conceived systems and methods create an environment where the analysis of similarities and differences between pieces of information can be customized and displayed in a manner that is easily understood. Unique points of view can be employed in decomposing complex information into manageable chunks while at the same time providing a container for the more amorphous concepts of context and relatedness. Maps, specifically hierarchical maps, can be the metaphor of choice for codifying and displaying the relationships between pieces of information and the importance of a piece to the point of view. Because the systems and methods can be easily customizable and configured to run on various computer hardware for numerous purposes, the core aspect of the systems and methods need not be limited to the visualization used to present the point of view or to the particular search technique employed. While these components can be important for the functioning of the system, it can be understood that future implementations can include other UI metaphors and alternate search routines. Mapping can include representations that express a point of view and the search routines can express the similarities and differences between how information shows up relative to that point of view. See '128 Patent, Col. 3, ll. 3-26. As such, there is no prior art precursor of any of the unique points of views and maps that easily customizable and configured to run on various computer hardware for numerous purposes as described in the '128 Patent.

Another important aspect of the invention, '128 Patent discloses systems and methods can include a system architecture that allows for both pattern recognition routines and logic rules to ascertain the relevance of a piece of information to a point of view, relationships between the point of view, and the frame of reference that provide a broader context within which the point of view can be understood, and methods of relating information to either the point of view or the frame of reference. A set of transformational and statistical language data can provide the backdrop for similarity functions to assess relatedness when the data presented does not identically match. Language can be interpreted broadly to include systematic methods of communication or sensation through a device. e.g., English, Latin, Cobol, image, sound, ultra-sonic, or encrypted language. See '128 Patent, Col. 3, ll. 27-42. As such, there is no prior art precursor of any of the pattern recognition routines and logic rules to ascertain the relevance of a piece of information to a point of view, relationships between the point of view, and the frame of reference that provide a broader context within which the point of view can be understood as described in the '128 Patent.

Similarity functions can determine exactly how similar something must be to be considered related, and difference functions can determine exactly how different something can be before being considered unrelated. As an example for the string of letters "Ave", abbreviation similarity functions can acknowledge that "Ave" can be an abbreviation for the word "Avenue". Difference functions can indicate that two strings of letters, one being half as long as the other and not being an abbreviation or alternate name for the other, are not related. See '128 Patent, Col. 3, ll. 43-53.

Since information in a computer system is stored in memory or on storage media such as hard drives, CD roms, DVD's, etc., the systems and methods can consist of information on how to access and manipulate information in various kinds of formats. In a preferred embodiment, the systems and methods can use the distinctions in points of views, frames of reference, similarity and difference functions, and relatedness maps such as hierarchies when storing and manipulating data access information. Additionally, the systems and methods can store information used to manage its own control and customization in the same format and using the same methods as that used to store application information. See '128 Patent, Col. 3, ll. 54-67.

As such, there is no prior art precursor of any of the systems and methods for data storage, retrieval, manipulation and display which can provide search engines and computer-based research tools for enabling multiple hierarchical points of view as described in the '128 Patent.

*See* FAC at ¶¶ 14-24.

While Costco ignores the specific facts set forth in the FAC in favor of its false narrative of mere abstractness, the fact that the conventional approach as of the Date of Invention was contrary to the solution as claimed is compelling and unrebutted evidence of unconventionality as of 2002. Such specific

factual allegations in the FAC define the state of the art as of the Date of Invention, and provide a basis in fact to conclude that the Asserted Claims are indeed patent-eligible.  *See Cellspin,* 927 F.3d at 1315 (an "inventive concept" is one which amounts to "something more than well-understood, routine, [and] conventional activities previously known to the industry").  The distinction over the prior art approach is plainly captured in the Asserted Claims, inasmuch as Asserted Claim 21 of the '128 Patent (for example) recites:

> A system for enabling multiple hierarchical points of view, comprising:
>
> a host processor;
>
> a user interface controlled by the host processor for inputting points of view to the system;
>
> a connections generator controlled by the host processor and in communication with the user interface to receive the points of view and generate connections between elements in the points of view and metadata of data sources;
>
> a connections database operated on by the connections generator in generating the connection and having a data structure including degrees of matching between data elements in the connections database and the metadata; and
>
> matching applications controlled by the host processor and operating on the data sources to determine sets of data elements in the data sources having at least pre-selected degrees of matching with the elements in the points of view, the user interface displaying the data elements and degrees of matching for the data elements according to the points of view.

Indeed, just as in *Cellspin,* the FAC here does significantly more than just label certain aspects as "inventive" – rather, the FAC sets out evidence (*see* FAC at ¶¶ 14-24) suggesting that the claimed approach was in fact unconventional.  *Cellspin,* 927 F.3d at 1318-19.  On this basis alone, the Asserted Claims are patent-eligible and Costco's Motion must be denied.

Again, these specific factual allegations in the FAC define the state of the art as of the Date of Invention, and provide a basis in fact to conclude that the Asserted Claims are indeed patent-eligible.

Because no prior art precursor of any of the systems and methods for data storage, retrieval, manipulation and display which can provide search engines and computer-based research tools for enabling multiple hierarchical points of view, the inventions as claimed recite a technological solution in the form of, for example, the "unique points of views and maps that are easily customizable and configured to run on various computer hardware for numerous purposes," as captured in Claim 21 of the '128 Patent.

The FAC's specific factual allegations define benefits and technological improvements captured in the Asserted Claims over the prevailing art as of June 2002; thus, the Asserted Claims are patent-eligible. *See PPS Data LLC v. Jack Henry & Assoc., Inc.,* 404 F.Supp.3d 1021, 1039 (E.D. Tex. 2019) ("when the claimed technology overrides the routine and conventional sequence of events in order to provide a technological benefit, it is eligible at *Alice* Step Two") (citing *SRI Int'l, Inc. v. Cisco Sys., Inc.,* 930 F.3d 1295, 1304 (Fed. Cir. 2019). Stated differently, claims such as these include an inventive concept when they provide a technological solution to a technological Federal problem. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,* 841 F.3d 1288, 1300 (Fed. Cir. 2016). The inventions of the Asserted Claims solve the technical problem facing the industry in 2002 associated in that the "proliferation of data can, in some circumstances, even serve as an obstacle to clear understanding, such as by obscuring connections between data or burying the most relevant data among a large amount of irrelevant data. *See* '128 Patent, Col. 1, ll. 21-30. Moreover, the fact that the FAC recites the disclosures and teachings *as taken directly from the written specification* of the Asserted Claims is fatal to Costco's Motion. In *Berkheimer,* the Court of Appeals fully credited the specification's disclosure of the state of the art, as well as its recitation of improvements over the art, as sufficient to create fact issues precluding summary judgment, as long as such were captured in the claims. *Berkheimer v. HP Inc.,* 881 F.3d 1360, 1369 (Fed. Cir. 2018); *see also PPS Data,* 404 F.Supp.3d at 1040-41 ("The Federal Circuit routinely relies on factual assertions in patent specifications not only as *some* evidence, but *conclusive* evidence of inventiveness")

(emphasis added). Of course, the benefits of the inventions, as noted in the FAC, are conferred due to the inventive concepts as claimed, as opposed to the mere practice of the "abstract idea" suggested by Costco of simply "retrieving and displaying data." Costco's Motion at 19. To reiterate, there is no prior art precursor of any of the (1) user interface controlled by the host processor for inputting points of view, (2) connections generator to generate connections between elements in the points of view and metadata of data sources, (3) connections database having a data structure including degrees of matching between data elements in the connections database and the metadata, and (4) matching applications operating on the data sources to determine sets of data elements in the data sources having at least pre-selected degrees of matching with the elements in the points of view, as described in the '128 Patent. Such technological improvements made possible the effective data management protocols as claimed.

Again, and as noted above, these factual assertions must be taken as true, and are derived directly from the intrinsic record. The foregoing reiterates the fact that the Asserted Claims are drawn to inventions which overcome the routine and conventional approach of the time. As expressly stated in the FAC:

> The inventors of the '128 Patent conceived systems and methods create an environment where the analysis of similarities and differences between pieces of information can be customized and displayed in a manner that is easily understood. Unique points of view can be employed in decomposing complex information into manageable chunks while at the same time providing a container for the more amorphous concepts of context and relatedness. Maps, specifically hierarchical maps, can be the metaphor of choice for codifying and displaying the relationships between pieces of information and the importance of a piece to the point of view. Because the systems and methods can be easily customizable and configured to run on various computer hardware for numerous purposes, the core aspect of the systems and methods need not be limited to the visualization used to present the point of view or to the particular search technique employed. While these components can be important for the functioning of the system, it can be understood that future implementations can include other UI metaphors and alternate search routines. Mapping can include representations that express a point of view and the search routines can express the similarities and differences between how information shows up relative to that point of view. See '128 Patent, Col. 3, ll. 3-26. As such, there is no prior art precursor of any of the unique points of views and maps that easily customizable and configured to run on various computer hardware for numerous purposes as described in the '128 Patent.

Another important aspect of the invention, '128 Patent discloses systems and methods can include a system architecture that allows for both pattern recognition routines and logic rules to ascertain the relevance of a piece of information to a point of view, relationships between the point of view, and the frame of reference that provide a broader context within which the point of view can be understood, and methods of relating information to either the point of view or the frame of reference. A set of transformational and statistical language data can provide the backdrop for similarity functions to assess relatedness when the data presented does not identically match. Language can be interpreted broadly to include systematic methods of communication or sensation through a device. e.g., English, Latin, Cobol, image, sound, ultra-sonic, or encrypted language. See '128 Patent, Col. 3, ll. 27-42. As such, there is no prior art precursor of any of the pattern recognition routines and logic rules to ascertain the relevance of a piece of information to a point of view, relationships between the point of view, and the frame of reference that provide a broader context within which the point of view can be understood as described in the '128 Patent.

Similarity functions can determine exactly how similar something must be to be considered related, and difference functions can determine exactly how different something can be before being considered unrelated. As an example for the string of letters "Ave", abbreviation similarity functions can acknowledge that "Ave" can be an abbreviation for the word "Avenue". Difference functions can indicate that two strings of letters, one being half as long as the other and not being an abbreviation or alternate name for the other, are not related. See '128 Patent, Col. 3, ll. 43-53.

Since information in a computer system is stored in memory or on storage media such as hard drives, CD roms, DVD's, etc., the systems and methods can consist of information on how to access and manipulate information in various kinds of formats. In a preferred embodiment, the systems and methods can use the distinctions in points of views, frames of reference, similarity and difference functions, and relatedness maps such as hierarchies when storing and manipulating data access information. Additionally, the systems and methods can store information used to manage its own control and customization in the same format and using the same methods as that used to store application information. See '128 Patent, Col. 3, ll. 54-67.

As such, there is no prior art precursor of any of the systems and methods for data storage, retrieval, manipulation and display which can provide search engines and computer-based research tools for enabling multiple hierarchical points of view as described in the '128 Patent.

*See* FAC at ¶¶ 20-24.

Such inventions satisfy the threshold requirement of 35 U.S.C. § 101 and are plainly patent

eligible. *See Bascom Global Internet Svcs, Inc. v. AT&T Mobility LLC,* 827 F.3d 1341, 1350 (Fed. Cir.

2016); *DDR Holdings, LLC v. Hotels.com, L.P.,* 773 F.3d 1245, 1258-59 (Fed. Cir. 2014); *Amdocs,* 841 F.3d at 1301-02.

Again, and as noted above, these factual assertions are drawn directly from the intrinsic record of the written specification, and explain how the Asserted Claims capture unconventional technological improvements over the art. On this point, the FAC expressly explains: "As such, there is no prior art precursor of any of the systems and methods for data storage, retrieval, manipulation and display which can provide search engines and computer-based research tools for enabling multiple hierarchical points of view as described in the '128 Patent." *See* FAC at ¶ 24. As such, they can be considered as conclusive evidence of the facts as stated. *Berkheimer,* 881 F.3d at 1369; *PPS Data,* 404 F.Supp.3d at 1040-41. At minimum, the facts as presented in the FAC satisfy the *Cellspin* standard, and Costco's Motion must be denied.

Moreover, the FAC continues:

Another important aspect of the invention, '128 Patent discloses systems and methods can include a system architecture that allows for both pattern recognition routines and logic rules to ascertain the relevance of a piece of information to a point of view, relationships between the point of view, and the frame of reference that provide a broader context within which the point of view can be understood, and methods of relating information to either the point of view or the frame of reference. A set of transformational and statistical language data can provide the backdrop for similarity functions to assess relatedness when the data presented does not identically match. Language can be interpreted broadly to include systematic methods of communication or sensation through a device. e.g., English, Latin, Cobol, image, sound, ultra-sonic, or encrypted language. See '128 Patent, Col. 3, ll. 27-42. As such, there is no prior art precursor of any of the pattern recognition routines and logic rules to ascertain the relevance of a piece of information to a point of view, relationships between the point of view, and the frame of reference that provide a broader context within which the point of view can be understood as described in the '128 Patent.

*See* FAC at ¶ 21.

Thus, as explained in the written specification, and as factually recited in the FAC, the Asserted Claims unconventionally capture an inventive architecture which includes the claimed "connections generator" for pattern recognition routines and logic rules to ascertain the relevance of a piece of

information to a point of view, relationships between the point of view, and the frame of reference that provide a broader context within which the point of view can be understood.  As such, the inventions as claimed provide substantially more than the mere recital of an abstract idea.

The FAC lays out, even beyond the above referenced instances, *fact after unrebutted fact* establishing the non-abstract nature of the claims, the inventive concepts captured in the claims, the advancements over the conventional art, and the overall eligibility of the claims.  As the FAC states: "[the '128 Patent] includes numerous claims defining distinct inventions [that] generally relate to unconventional and technically improved computer database systems and methods, and in particular, database system and methods that permit the storage, retrieval and manipulation of a given set of data in different contexts [that] are directed to improvements in the functionality of computer and network database platforms."  *See* FAC at ¶¶ 12.

In view of the multitude of such specific, annotated, and unrebutted statements of fact concerning eligibility, one would expect a defendant to offer *clear and convincing* rebuttal evidence.  The abject failure of Costco's Motion is evident on its face, inasmuch as the most detailed "analysis" offered is the self-serving and plainly false assertion that: "Even with the new allegations in the Amended Complaint, there are no factual disputes to preclude early dismissal."  *See* Costco's Motion at 2 and 24-27. (citing only ¶¶ 18, 19 and 24-26).  Of course, Costco's citation to the various summary statements set forth in the FAC entirely overlook the intervening paragraphs of specific facts, as discussed at length above, and as the Court can readily ascertain from an examination of ¶¶ 12-23.  Such facts, taken as true, firmly establish eligibility.

The FAC sets out an extensive but non-exhaustive list of technological solutions to technological problems solved by the inventions of the '128 Patent.  Such solutions are enumerated in the written

specification itself, which is authoritative as to the state of the art. *See Berkheimer,* 881 F.3d at 1369; *PPS Data,* 404 F.Supp.3d at 1040-41.

Costco's Motion, of course, cannot overcome these factual allegations in the FAC, and must be denied.

### B.  Costco's Eligibility "Analysis" is Defective

As noted above, the factual allegations of the Complaint in this case are more than sufficient to state a plausible claim for relief, and Costco's Motion must be denied.  In any event, to the extent the Court is inclined to evaluate the eligibility of the Asserted Claims on this record, Plaintiff would show that, not only is Costco's "analysis" severely defective, but the Asserted Claims should be affirmatively deemed patent-eligible under 35 U.S.C. § 101.

First, with respect to *Alice* Step One, the Asserted Claims are not directed to an abstract idea, and the misguided notion that the Asserted Claims recite mere "conventional components" is entirely irrelevant. *See ILife Techs., Inc. v. Nintendo of America, Inc.,* 2021 WL 117027 at *2 (Fed. Cir. 2021) ("the district court erred to the extent that it incorporated conventionality of claim elements at step one"; and "[a] claim is not directed to an abstract idea simply because it uses conventional technology").  At the Step One phase, the proper approach is to determine what the Asserted Claims are "directed to" by evaluating what the patent itself asserts as the "focus" of the claimed advance over the prior art. *TecSec, Inc. v. Adobe, Inc.,* 978 F.3d 1278, 1292-93 (Fed. Cir. 2020).  Such an analysis must remain true to the language of the claims themselves in light of the specification, and must be careful to avoid overgeneralizing the claims. *Id.* (citing cases).  Of course, claims directed to software improvements can be patent-eligible when directed to non-abstract improvements to the functionality of a computer or network platform itself. *Id.* at 1293.  In such situations, it is proper to make two inquiries: (i) is the focus of the claimed advance to a solution of a problem specifically arising in the realm of computers; and (ii)

is the claim properly characterized as identifying a "specific" improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function. *Id.* (collecting cases).

The inventions of the Asserted Claims are described in the specification as "focusing" on advancing over the prior art by providing (1) "systems and methods create an environment where the analysis of similarities and differences between pieces of information can be customized and displayed in a manner that is easily understood. Unique points of view can be employed in decomposing complex information into manageable chunks while at the same time providing a container for the more amorphous concepts of context and relatedness. Maps, specifically hierarchical maps, can be the metaphor of choice for codifying and displaying the relationships between pieces of information and the importance of a piece to the point of view. Because the systems and methods can be easily customizable and configured to run on various computer hardware for numerous purposes, the core aspect of the systems and methods need not be limited to the visualization used to present the point of view or to the particular search technique employed. While these components can be important for the functioning of the system, it can be understood that future implementations can include other UI metaphors and alternate search routines. Mapping can include representations that express a point of view and the search routines can express the similarities and differences between how information shows up relative to that point of view" (*see* '128 Patent (attached hereto for convenience as Exhibit A) Col. 3, ll. 3-26) and (2) "system architecture that allows for both pattern recognition routines and logic rules to ascertain the relevance of a piece of information to a point of view, relationships between the point of view, and the frame of reference that provide a broader context within which the point of view can be understood, and methods of relating information to either the point of view or the frame of reference. A set of transformational and statistical language data can provide the backdrop for similarity functions to assess relatedness when the data presented does not identically match. Language can be interpreted broadly to include systematic

methods of communication or sensation through a device. e.g., English, Latin, Cobol, image, sound, ultra-sonic, or encrypted language." *See* '128 Patent, Col. 3, ll. 27-42.  This analysis, in accordance with *TecSec,* identifies the "focus" of the invention, and remains true to the claims without overgeneralizing. Because the "focus" as defined is directed to non-abstract improvements in the functionality of computers, the Asserted Claims are not directed to abstract ideas, and are patent-eligible.  This is so, because: (i) the focus of the claimed advance is to a solution of a problem specifically arising in the realm of computers.  Again, these Asserted Claims are drawn to handling the proliferation of data which can, in some circumstances, even serve as an obstacle to clear understanding, such as by obscuring connections between data or burying the most relevant data among a large amount of irrelevant data. *See* '128 Patent, Col. 1, ll. 21-30.  Moreover, the data processing solutions of the Asserted Claims plainly implicate and require the use of a computer.  *See id.* at Claim 21 (claiming "a host processor").  Finally, the Asserted Claims are not directed to abstract ideas, because: (ii) the claims are properly characterized as identifying a "specific" improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function.  Just as was true in the claims examined in *TecSec*, as well as those in *SRI Int'l,* 930 F.3d at 1303; *Ancora Techs., Inc. v. HTC America, Inc.,* 908 F.3d 1343, 1345, 1348 (Fed. Cir. 2018); *Data Engine v. Google,* 906 F.3d 999, 1007-1008 (Fed. Cir. 2018); and *Finjan v. Blue Coat Systems,* 879 F.3d 1299, 1304-05 (Fed. Cir. 2018), the Asserted Claims here are specifically drawn to improving the functionality and usability of data management systems by a system architecture that allows for both pattern recognition routines and logic rules to ascertain the relevance of a piece of information to a point of view, relationships between the point of view, and the frame of reference that provide a broader context within which the point of view can be understood.

Costco's citation and reliance on various Federal Circuit eligibility opinions is misplaced and distinguishable, and for many of the same reasons other courts (including this one) have previously found.

More specifically, the claims at issue in *Electric Power* were directed to "merely collecting information of a particular content, analyzing it by steps people go through in their minds, or by mathematical algorithms, without more, and presenting the results." *See, e.g., Entropic Comms., LLC v. Charter Comms. Inc.,* 2023 WL 8535214 at *3 (E.D. Tex. 2023) (Payne; Report and Recommendation; Adopted at 2023 WL 8534956 (Gilstrap)) (rejecting defendant's argument based on *Electric Power* and finding the claims at issue were directed to "a novel technique of extracting more information regarding the status of a communication channel").

Likewise, the claims at issue in *Mobile Acuity* were analogous to the claims at issue in *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* 776 F.3d 1343, 1347-48 (Fed. Cir. 2014)*,* which were "simply recited the long-practiced abstract idea of collecting data, recognizing certain data, and storing that data with already well-known methods." *See, e.g., Smartflash LLC v. Apple, Inc.,* 2015 WL 11090901 at *8 (E.D. Tex. 2015) (Mitchell; Report and Recommendation; Adopted at 2015 WL 661174 (Gilstrap; further noting that "the Court recognized that the patents recite several different memory types throughout the claims – as opposed to simply generic computer memory") (rejecting defendant's argument based on *Content Extraction* and finding "meaningful limitations that transform the abstract idea of the general purpose of the claims into a patent-eligible invention"). Finally, the claims at issue in *IBM* were directed to "simply claimed using a computer to increase the efficiency of filtering or layering map data." *See Pantech Corp. v. LG Elecs. Inc.*, No. 5:22-CV-113-RWS-JBB, 2023 WL 6065092, at *8 (E.D. Tex. Aug. 21, 2023), report and recommendation adopted, No. 522CV00113RWSJBB, 2023 WL 6260004 (E.D. Tex. Sept. 26, 2023) (rejecting argument based on *IBM* where the claims at issue included an "integrated user interface that determines multiple types of messages and displays the corresponding content on wireless communication terminals is plainly more akin to the claims in Core Wireless than IBM"). Claim 21 of the '128 Patent, like *Pantech*, includes a

user interface controlled by a host processor that also controls a connections generator which is also "in communication with the user interface to receive the points of view and generate connections between elements in the points of view and metadata of data sources."

As was true in those cases cited immediately above, the Asserted Claims here are directed to far more specific implementations than mere pen-and-paper historical practices. Rather, Claim 21 of the '128 Patent recite non-abstract security protocols for use in large scale data management systems which include extracting specific sensitive content using categorical filters for specialized access-controlled storage and subsequent inferential-based reconstruction. As in *NexStep* and *Entropic,* such claims overcome the "mental application" argument offered by Defendant by specifically requiring the incorporation and use of a distributed computer system, data objects, representations of select content, multiple data stores for select and extracted data, a communication network, and content, contextual, and taxonomic filters. Likewise, as in *Smartflash,* the claims here recite a "plurality of select content data stores" and "extract data stores." In sum, the Asserted Claims are not drawn to abstract ideas, and are thus patent-eligible.

Even assuming the Court finds each of the Asserted Claims to be directed to abstract ideas, they each capture inventive concepts sufficient to transform the nature of the claims beyond the mere practice of any such abstract idea. *Alice Corp. Pty. Ltd. v. CLS Bank Intern.,* 573 U.S. 208, 217-18 (2014). With respect to the appropriate construction of the "abstract idea" underlying the Asserted Claims (which Plaintiff disputes as an initial matter), the overbroad generalization suggested by Defendant must be rejected. *TecSec,* 978 F.3d at 1293 ("[W]e have reiterated the Supreme Court's caution against overgeneralizing claims in the § 101 analysis, explaining that characterizing the claims at a high level of abstraction that is untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule") (citations omitted). Again, and if anything, the Asserted Claims here are narrowly

directed to database system and methods that permit the storage, retrieval and manipulation of a given set of data in different contexts.

Costco's Motion suggests that the Asserted Claims are nothing more than a collection of standard computer components.  Defendant is incorrect, inasmuch as it ignores the meaningful limitations of the claims in favor of an overgeneralized abstraction.  Claim 21 of the '128 Patent recites a user interface controlled by a host processor that also controls a connections generator which is also "in communication with the user interface to receive the points of view and generate connections between elements in the points of view and metadata of data sources.  These exemplary limitations capture the inventive concepts and unconventional architecture (as discussed above, and as alleged in the FAC), and elevate these Asserted Claims far beyond the mere practice of "retrieving and displaying data" (using Costco's construction).  Such a proposed generalization fails to comport with the true nature of the Asserted Claims, and Defendant ignores the central technical concepts of the Claims.  Moreover, even assuming for the moment that the Asserted Claims incorporate certain ordinary hardware components to perform the recited steps, such is not dispositive as Step Two.  *See, e.g., Infernal Tech. LLC v. Sony Interactive Entertainment LLC,* 2021 WL 5804262 at FN. 3 (E.D. Tex. 2021) ("The fact that a conventional computer is used does not, by itself, render the claim directed to an abstract idea.  Rather, the inquiry is whether the claims simply introduce a conventional computer as a tool. Claims that seek to improve the functionality and practical effect of conventional computers – rather than merely use them as a tool – suggest they are not abstract"); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 71 (2012) ("However, the Supreme Court has also recognized that because 'all inventions at some level embody, use, reflect, rest upon, or apply ... abstract ideas,' this exclusionary principle cannot be so broad as to make something un-patentable simply because it involves, at some level, an abstract

concept"); *Bascom,* 827 F.3d at 1350 (an inventive concept can be found in the non-conventional and non-generic arrangement even of known, conventional pieces).

Costco's Motion provides this Court with pure attorney argument and precisely zero evidence tending to prove that *any* aspect of the Asserted Claims was well-understood, routine, and conventional as of June 2002. Rather, Defendant cites a laundry list of opinions in which *other patents* in *other cases* with *different disclosures* asserted by *insufficient pleadings* somehow dictate its desired outcome in this case. In the process, Defendant flatly rejects the aforementioned explicit allegations of the FAC as merely "boilerplate" and "implausible." Even a cursory review of the FAC filed in this case reveals otherwise, and Defendant knows it.

Again, as specifically alleged in the FAC, and as discussed in the intrinsic record, the Asserted Claims capture a number of inventive concepts. *See supra* discussion of FAC at ¶¶ 12-24. Because Costco's Motion does not, and cannot overcome these specific recitations of fact and unconventional inventive concepts, it must be denied. Moreover, the Asserted Claims should be affirmatively deemed patent-eligible as reciting multiple inventive concepts.

Finally, Defendant argues that all claims can be invalidated by this Court based upon an analysis of so-called representative Claim 21 of the '128 Patent. Plaintiff does not agree that Claim 21 is representative of all claims, and no single claim is representative (for purposes of infringement or validity) of the others. Defendant has not satisfied its burden of establishing that any single claim is representative. *See, e.g., Tiare Tech.,* 2023 WL 2733348 at *2 (Payne; Report and Recommendation (adopted at 2023 WL 2716576 (Gilstrap)) ("Such a conclusory analysis is not tethered to the language of the claims and thus fails to show the absence of legally relevant distinctions between the representative claim and the remaining asserted claims") (citing *PPS Data,* 404 F.Supp.3d at 1033 ("courts should err on the side of finding a claim is not representative"))).

### C. Claim Construction

Defendants argue that claim construction is not necessary to resolve eligibility because all asserted patents are "retrieving and displaying data based on a user input, which is abstract" Costco's Motion at 15. Defendants, however, reach this conclusion by impliedly construing claim terms. For example, in claim 21 of the '128 Patent—which Costco contend is representative (*see id*. at 21)—it argues that "the claimed "user interface" is used for the generic operation of "inputting" data. The "connections generator" and the "connections database" are both used in relation to "generating" connections which appear to be standard database operations. The "matching applications" are used to "determine sets of data elements" which appears to simply consist of grouping data." *Id*. at 9. This is problematic, as this Court has recognized similarly in *DigitalDoors, Inc. v. Cathay Bank*, No. 2:24-CV-00312-JRG-RSP, 2025 WL 950073, at *1 (E.D. Tex. Mar. 28, 2025) (adopting *DigitalDoors, Inc. v. Cathay Bank*, No. 2:24-CV-00312-JRG-RSP, Dkt. No. 72 (E.D. Tex. Mar. 8, 2025), attached hereto as Exhibit B.

And although Costco argues that claim construction is not necessary to resolve eligibility (while also impliedly construing claim terms, as discussed above), Plaintiff asserts that at least the preamble and three terms must be construed prior to the Court ruling on Defendant's motion. The terms and their constructions focus on whether there was a technical improvement. The Court has previously noted that determining eligibility under Section 101 "at the pleading stage is permissible"; however, "those issues are often inextricably tied to claim construction." *Phoenix Licensing, L.L.C. v. CenturyLink, Inc.*, No. 2:14-cv965-JRG-RSP, 2015 WL 5786582, at *2 (E.D. Tex. Sept. 30, 2015) (noting that "the need for claim construction is especially apparent . . . where Defendants dispute the meaning of various terms among the various claims [they] purport to be representative of all Asserted Patents"). Moreover, the parties' disputes are relevant to the Section 101 inquiry. For example, the parties dispute whether the claimed "connections generator" alone, or in combination with the remaining claim elements, are

sufficient to impart an inventive concept upon claim 1 under Alice step 2. Indeed, the Federal Circuit has previously held that it would be an error to not address claim construction disputes relevant to determining eligibility under Section 101. *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1375 (Fed. Cir. 2019) (finding that the "district court erred by failing to address the parties' claim construction dispute before" determining patent eligibility).

First, the preamble of the '128 Patent, "A system for enabling multiple hierarchical points of view," is limiting and that construction is necessary to contextualize the claimed subject matter. Specifically, "system for enabling multiple hierarchical points of view" is fundamentally different from Defendant's abstraction of the patent ("retrieving and displaying data based on particular 'points of view's' Position") which the specification distinguishes. The specification teaches, and the preambles recite, "system for enabling multiple hierarchical points of view," a technical improvement over the prior art. Previously, the prior art was limited in that "a need exists for a system that permits the user to conduct a search and view results that reflect the unique requirements defined by the user's point of view." *See* '128 Patent, Col. 2, ll. 42-45. Therefore, the term must be construed such that it makes clear the discrete technical improvement over prior systems enabling points of view.

The term "connections generator" must also be construed where it means a "dynamic connections generator," whereas the prior art used a static query, as described in the '128 Patent (Col. 26, ll. 44-54 and Col. 33, ll. 5-30) and Fig. 9.

Further, the term "degrees of matching" of the '128 Patent must also be construed where it means "including binary results, i.e. match or not match, results." As with the preamble, the specification details how crucial it is to the technical improvement over the prior art, as described in the '128 Patent (Col. 29, ll. 18-25 and Col. 31, ll. 34-40) and Fig. 10.

Indeed, the term "points of view" must be construed as requiring "multiple hierarchies, other users' points of views, and informational points of view" The specification details how crucial it is to the technical improvement over the prior art, as described in the '128 Patent (Col. 2, ll. 15-28, 46-53; Col. 3, ll. 6-9, 58-63; Col. 12, ll. 17-26; and Col. 15, ll. 60-67 and Col. 16, l. 1- Col. 34, l. 32) and Fig. 2A, 2B, 2C, 3, 4, 5, 6, 7, 8, 9, 10 and 11.

**IV.    Conclusion**

Costco's Motion must be denied with prejudice as to the allegations of invalidity under 35 U.S.C. § 101.  As shown herein, the Asserted Claims are drawn to patent-eligible subject matter.

//

Dated:  April 18, 2025

Respectfully Submitted

*/s/ Christopher A. Honea*
M. Scott Fuller
   Texas Bar No. 24036607
   Georgia Bar No. 100968
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   California Bar No. 239829
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   California Bar No. 232473
   chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (888) 908-4400

**ATTORNEYS FOR PLAINTIFF**
**GLOBAL CONNECT TECHNOLOGY, INC.**

   24