# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| GLOBAL CONNECT TECHNOLOGY, INC.<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>CHRISTIES INTERNATIONAL PLC,<br><br>　　　　　　　Defendant. | Case No. 2:24-cv-00647-JRG<br>**JURY TRIAL DEMANDED**<br>(LEAD CASE) |
| GLOBAL CONNECT TECHNOLOGY, INC.<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>BEST BUY CO., INC. AND<br>BESTBUY.COM, LLC<br><br>　　　　　　　Defendant. | Case No. 2:24-cv-00648-JRG<br>**JURY TRIAL DEMANDED**<br>(MEMBER CASE) |

**BEST BUY CO., INC. AND BESTBUY.COM, LLC'S MOTION TO DISMISS
FOR LACK OF STANDING PURSUANT TO FED. R. CIV. P. 12(h)(3) AND 12(b)(1)**

# TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

    I.    This Case Should Be Dismissed Because Global Connect Did Not Have The Required Article III Constitutional Standing When It Filed This Lawsuit. ............. 3

        A.    Applicable Legal Principles .......................................................................... 3

        B.    Global Connect Did Not Have Article III Standing When It Filed This Lawsuit Because It Was A Dissolved Entity Without Any Rights In the Asserted Patent ............................................................................................ 5

        C.    Global Connect's Post-Lawsuit Nunc Pro Tunc Does Not Cure Its Lack Of Article III Standing. ................................................................................. 7

        D.    Global Connect's Remaining Arguments Miss The Mark. .......................... 9

    II.    Dismissal With Prejudice is Appropriate, As Is Awarding Best Buy Its Fees In Bringing This Motion. ...................................................................................... 11

CONCLUSION ...................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
  625 F.3d 1359 (Fed. Cir. 2010) ................................................................................................ 7

*Bankston v. Burch*,
  27 F.3d 164 (5th Cir. 1994) ....................................................................................................... 4

*In re Cirba, Inc.*,
  2021 WL 4302979 (Fed. Cir. 2021) .............................................................................. 4, 10, 11

*Cunningham v. Matrix Fin. Servs., LLC*,
  No. 419-CV-00896-ALM-CAN, 2021 WL 1233466 (E.D. Tex. Feb. 12, 2021) ..................... 5

*Decapolis Sys., LLC v. UT Sw. Health Sys.*,
  No. 2:22-CV-00159-JRG-RSP, 2025 WL 950067 (E.D. Tex. Mar. 28, 2025) ...................... 12

*Enzo APA & Son, Inc. v. Geopag A.G.*,
  134 F.3d 1090 (Fed. Cir. 1998) ............................................................................................ 6, 7

*FluorDx LLC v. Quidel Corp.*,
  No. 18-CV-2866 JLS (NLS), 2019 WL 4599842 (S.D. Cal. Sept. 23, 2019) ......................... 9

*Intellectual Tech. LLC v. Zebra Technologies Corp.*,
  101 F.4th 807 (Fed. Cir. 2024) ..................................................................................... 4, 10, 11

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ................................................................................................. 4, 9, 10, 11

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
  925 F.3d 1225 (Fed. Cir. 2019) .............................................................................................. 10

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
  240 F.3d 1016 (Fed. Cir. 2001) ................................................................................................ 6

*Paradise Creations, Inc. v. UV Sales, Inc.*,
  315 F.3d 1304 (Fed. Cir. 2003) ....................................................................................... 4, 5, 6, 9

*Schwendimann v. Arkwright Advanced Coating*,
  959 F.3d 1065 (Fed. Cir. 2020) ................................................................................... 9, 10, 11

*Shenzhen Tange Li'an E-Commerce Co., Ltd. v. Drone Whirl LLC*,
  No. 1:20-CV-00738-RP, 2021 WL 3474007 (W.D. Tex. Aug. 6, 2021) ................................. 4

*Speedplay, Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000) ................................................................................................ 8

*Symbology Innovations, LLC v. Valve Corp.*,
    No. 2:23-CV-00419-JRG, 2025 WL 364075 (E.D. Tex. Jan. 31, 2025) .............................. 12

*TexasLDPC Inc. v. Broadcom Inc.*,
    No. 1:18-CV-01966-SB, 2023 WL 6387974 (D. Del. Sept. 29, 2023) ................................. 7

Article III Constitutional standing ("Article III standing") must exist on the date a lawsuit is filed. Plaintiff Global Connect Technology, Inc. ("Global Connect") did not have Article III standing on August 4, 2024—the date this suit was filed—because on that date, Global Connect (1) was a dissolved company, and had been dissolved for more than ***seventeen (17) years***, and (2) did not have ***any*** rights in the asserted patent. This case must be dismissed under Federal Rules of Civil Procedure 12(h)(3) and 12(b)(1).

These facts should not surprise Global Connect. Not only were the facts in Global Connect's control, but Defendants Best Buy Co., Inc. and BestBuy.com, LLC (collectively, "Best Buy") told Global Connect's counsel that Global Connect lacked Article III standing months ago and requested dismissal. Global Connect refused and instead attempted to retroactively cure the standing defect. But a lack of Article III standing is ***not curable*** after the fact. As explained below, Global Connect's attempts to retroactively cure the legally uncurable are needlessly prolonging this case and unnecessarily increasing Best Buy's defense costs. Best Buy, therefore, requests dismissal with prejudice, and respectfully asks the Court to award Best Buy's fees incurred for bringing this motion.

## FACTUAL BACKGROUND

The facts relevant to this motion are not disputed. On May 31, 2007, Global Connect Technology, Inc. was administratively dissolved. Ex. 1.[1] On April 22, 2011, the named inventor, Ms. Jena J. Jordahl, attempted to assign Application No. 10/461,182 (the application from which U.S. Patent No. 7,246,128 (the "'128 patent") issued) to the then-dissolved Global Connect. Ex. 2 ("the Attempted 2011 Assignment"). In the Attempted 2011 Assignment, Ms. Jordahl represented and warranted that she (as the assignor) had:

---

[1] Unless otherwise noted, the cited exhibits are attached to the Declaration of Alexander Friel (the "Friel Decl.").

-1-

> the *full and unencumbered right* to sell, assign, and transfer the interests sold, assigned, and transferred herein, and that ASSIGNOR *has not executed and will not execute any document or instrument in conflict herewith*.

Ex. 2, at 2 (all emphasis added unless indicated otherwise). Although the Attempted 2011 Assignment was recorded with the Patent and Trademark Office ("PTO") (Ex. 2), there is no evidence the PTO knew that Global Connect had been dissolved prior to the attempted assignment.

Seventeen-plus years after its dissolution, on August 4, 2024, the still-dissolved Global Connect filed the present lawsuit. Dkt. 1. Thereafter, on May 12, 2025, Best Buy served discovery relating to, among other things, Global Connect's lack of standing. On June 20, 2025, after receiving Best Buy's discovery, Global Connect filed its Application for Reinstatement with the Commonwealth of Massachusetts. Ex. 3. On June 27, 2025, Global Connect responded to Best Buy's Request for Admission by, among other things, admitting that the website for the secretary of the Commonwealth of Massachusetts shows Global Connect was Involuntarily Dissolved on "05-31-2007." Ex. 4.

On August 12, 2025, Ms. Jordahl executed a Nunc Pro Tunc Corrective Patent Assignment ("Nunc Pro Tunc"). Ex. 7.[2] The Nunc Pro Tunc contains unsworn representations regarding, among other things, Ms. Jordahl's purported earlier 2002 executed assignment ("the Alleged 2002 Assignment") of a "patent" to Global Connect Technology, Inc. *Id.* The representations regarding the Alleged 2002 Assignment are confounding as the '128 patent did not exist at that time and even predated the filing of the provisional application upon which the '128 patent is based. It is

---

[2] The Nunc Pro Tunc was made in response an August 1, 2025 letter from Best Buy's counsel explaining the legal basis for Global Connect's lack of Article III standing and putting Global Connect and its counsel on notice of its Rule 11 obligations. Ex. 5 (Best Buy's letter) and Ex. 6 (Global Connect's responsive email).

thus unclear what, if anything, could have been assigned. The Nunc Pro Tunc also indicates that the death of Global Connect's corporate secretary and subsequent dissolution of Global Connect in 2007 "interfered with the [alleged] original assignment of patents rights" (*id.*) but fails to explain how a death in 2004 affected an alleged 2002 assignment. Nor does it explain why the Attempted 2011 Assignment was necessary if the patent had already been assigned in 2002. And even though Ms. Jordahl filed the Attempted 2011 Assignment with the PTO, the Nunc Pro Tunc does not mention it, or attempt to reconcile that the alleged existence of a 2002 assignment directly contradicts Ms. Jordahl's representations and warranties in the Attempted 2011 Assignment. *See* Ex. 2 (where Ms. Jordahl averred she had "the full and unencumbered right to sell, assign, and … has not executed and will not execute any document or instrument in conflict herewith"). The Nunc Pro Tunc, however, further confirms that Global Connect was dissolved on May 31, 2007. Ex. 7.

On September 4, 2025, counsel for Best Buy sent a letter to Global Connect's counsel explaining in detail why Global Connect's subsequent actions (*i.e.*, the attempted revival and Nunc Pro Tunc) could not and did not legally cure Global Connect's Article III standing defect. Ex. 8. That letter also distinguished the case law provided by Global Connect's counsel (which related to statutory, not Article III standing) and reiterated a demand that the lawsuit be dismissed. *Id.* at 3. On September 18, 2025, counsel for Global Connect responded by email contending that the First Amended Complaint adequately pled Article III standing. Ex. 9. Later that day, the parties met and conferred on this and other issues. No resolution was reached regarding this issue.

## ARGUMENT

**I.    This Case Should Be Dismissed Because Global Connect Did Not Have The Required Article III Constitutional Standing When It Filed This Lawsuit.**

### A.    Applicable Legal Principles

There are two standing requirements in patent cases (i) Article III Constitutional standing,

-3-

and (ii) statutory standing under 35 U.S.C. § 281. *See Intellectual Tech. LLC v. Zebra Technologies Corp.*, 101 F.4th 807, 814 (Fed. Cir. 2024) ("acknowledge[ing] that the § 281 inquiry (sometimes called statutory standing in our cases, particularly before *Lexmark*)[3] and the injury-in-fact inquiry (for constitutional standing) are distinct."); *In re Cirba, Inc.*, 2021 WL 4302979 (Fed. Cir. 2021) (distinguishing Article III Constitutional standing inquiry from the statutory standing inquiry). To establish Article III standing, the aggrieved party (*i.e.*, plaintiff) must demonstrate at least a concrete injury, traceable to the challenged conduct (*i.e.*, alleged infringement), that is able to be addressed in the suit. *Intellectual Tech.*, 101 F.4th at 814; *In re Cirba*, 2021 WL 4302979, at *3. The concrete injury inquiry (also termed "injury-in-fact threshold") turns on whether a party has an exclusionary right. *Intellectual Tech.*, 101 F.4th at 81.

Article III standing is a jurisdictional requirement that ***must exist when the lawsuit is filed and is "<u>incurable</u> if absent at the initiation of suit."*** *Intellectual Tech.*, 101 F.4th at 814 (emphasis added); *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1308 (Fed. Cir. 2003). Article III standing's injury-in-fact threshold "carries through the case, requiring the plaintiff prove it 'with the manner and degree of evidence required at the successive stages of the litigation.'" *Intellectual Tech.*, 101 F.4th at 813.

Objections to standing are jurisdictional in nature and can be raised at any time. *See, e.g.*, *Bankston v. Burch*, 27 F.3d 164, 167 (5th Cir. 1994) (citing Fed. R. Civ. P. 12(h)(3)). Courts apply the standards developed under Fed. R. Civ. P. 12(b)(1) to motions filed under Rule 12(h)(3). *Shenzhen Tange Li'an E-Commerce Co., Ltd. v. Drone Whirl LLC*, No. 1:20-CV-00738-RP, 2021 WL 3474007, at *2 (W.D. Tex. Aug. 6, 2021). Motions to dismiss under Rule 12(h)(3) differ from Rule 12(b)(1) motions in that they can be brought at any time, by any party or interested individual,

---

[3] *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

or considered *sua sponte* by the court. *Cunningham v. Matrix Fin. Servs., LLC*, No. 419-CV-00896-ALM-CAN, 2021 WL 1233466, at *3 (E.D. Tex. Feb. 12, 2021), *report and recommendation rejected*, 531 F. Supp. 3d 1164 (E.D. Tex. 2021) (reversed on other grounds).

### B. Global Connect Did Not Have Article III Standing When It Filed This Lawsuit Because It Was A Dissolved Entity Without Any Rights In the Asserted Patent.

Global Connect was administratively dissolved and did not have an ownership interest in the '128 patent when it filed this lawsuit. It thus had no exclusionary rights or concrete injury redressable in the lawsuit. *See Paradise Creations*, 315 F.3d 1304 (Fed. Cir. 2003) (affirming district court's dismissal of suit for lack of Article III Constitutional standing where a dissolved corporation brought a patent suit on patent rights allegedly obtained during the period when the company was dissolved).

The reasoning in *Paradise Creations* is instructive. There, one of the inventors (Hayduchok) entered into an agreement purporting to grant the dissolved plaintiff, Paradise Creations, rights in a patent. *Id.* at 1306. Paradise thereafter sued UV Sales for patent infringement during the period it was administratively dissolved. *Id.* UV Sales moved for summary judgment for, among other things, lack of Article III standing. *Id.* During the pendency of the summary judgment motion, Paradise obtained reinstatement and tried to amend its complaint to add the inventors (Hayduchok and Strauss) as plaintiffs under FRCP 15. *Id.* The district court denied Paradise's Rule 15 motion noting that "attempts to 'fix' deficient standing by adding additional plaintiffs are futile." *Id.*, at 1306-1307. The district court then granted UV Sales' summary judgment motion holding the state's corporation statutes could not retroactively create jurisdiction where it was lacking at the time the suit was filed. *Id.* at 1307.

The Federal Circuit affirmed. The Court began its analysis by reiterating that a patent

plaintiff must demonstrate it held enforceable title to the patent *at the inception of the lawsuit. Paradise Creations*, 315 F.3d at 1309 (emphasis in original). The Court then addressed Paradise's argument that the corporate revival retroactively validated its earlier executed license agreement, which Paradise argued had created rights that had been "constructively held" during the period it was dissolved. Relying on its earlier decision in *Enzo APA & Son, Inc. v. Geopag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998), the Federal Circuit rejected that argument. Just as a written agreement executed after the inception of a lawsuit that purported to retroactively transfer patent rights to the plaintiff did not retroactively confer standing, a post-lawsuit revival of a dissolved corporation also cannot retroactively confer standing. *Paradise Creations*, 315 F.3d at 1309-10. "We see no meaningful distinction between a contract provision that purports to vest title retroactively in the plaintiff and a state law that is alleged to vest enforceable title retroactively." *Id.*. The Court also distinguished the situation from that in *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016 (Fed. Cir. 2001) where the patent plaintiff possessed some rights in the patent at the time the suit was filed noting that, unlike in *Mentor*, the plaintiff in *Paradise Creations* "possessed no enforceable rights … and therefore lacked a cognizable injury necessary to assert standing under Article III of the Constitution." *Id.* at 1310.

The facts in this case are very similar to those in *Paradise Creations*. Here, an attempt was made in 2011 to assign patent rights to a dissolved entity (Ex. 2), and thereafter the still dissolved entity filed a patent lawsuit. Then, like the plaintiff in *Paradise Creations*, Global Connect attempted to revive itself post-filing of the Complaint after it learned it lacked standing. That attempted revival fails for the same reason it did in *Paradise Creations*. Also, Global Connect, like the plaintiff in *Paradise*, does not argue the Attempted 2011 Assignment made during its dissolution period conferred any patent rights. *See* Ex. 7 (the Nunc Pro Tunc fails to even mention

the Attempted 2011 Assignment let alone argue that it conferred any rights to the then-dissolved Global Connect).[4] It is undisputed Global Connect was dissolved and had no enforceable title to the '128 patent at the time it filed this lawsuit. Accordingly, this case should be dismissed for lack of Article III standing.

        **C.    Global Connect's Post-Lawsuit Nunc Pro Tunc Does Not Cure Its Lack Of Article III Standing.**

Courts recognize that a *nunc pro tunc* assignment of an asserted patent cannot retroactively remedy the fact that the plaintiff lacked legal title to that patent at the time it filed the lawsuit. *See Abraxis Bioscience, Inc. v. Navinta LLC,* 625 F.3d 1359, 1365–66 (Fed. Cir. 2010) (recognizing that a plaintiff could not execute a *nunc pro tunc* assignment of the asserted patent to remedy the fact that the plaintiff lacked legal title to that patent at the time it filed the lawsuit); *see also TexasLDPC Inc. v. Broadcom Inc*., No. 1:18-CV-01966-SB, 2023 WL 6387974, at *6 (D. Del. Sept. 29, 2023) (Bibas, C.J. sitting by designation). While *nunc pro tunc* agreements are permissible to "remedy limited deficiencies in justiciability by expanding previously limited patent rights," they "cannot cure a complete lack of standing." *TexasLDPC Inc.*, 2023 WL 6387974 at *6 (citing *Alps S., LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1384–85 (Fed. Cir. 2015)). Permitting such after-the-fact cures would undermine Article III's case-or-controversy requirement. *Enzo*, 134 F.3d at 1093 (Fed. Cir. 1998) ("[p]ermitting non-owners . . . the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignment in order to expand their arsenal and the scope of litigation.")

---

[4] The Alleged 2002 Assignment is of no import because (i) nothing assignable existed at that time, and, as discussed in more detail below, (ii) the assignment has not been produced, and Ms. Jordahl's statements of its existence are inconsistent with her representations and warranties in the Attempted 2011 Assignment.

Nor does the Nunc Pro Tunc's reference to an Alleged 2002 Assignment and attempt to validate that alleged assignment provide a springing patent right. First, Plaintiff has not produced the Alleged 2002 Assignment or any evidence of its existence. Ex. 7. An after-the-fact, unsubstantiated alleged assignment without more does not confer any patent rights. 35 U.S.C. § 261 (requiring assignment to be in writing); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000) (instructing that for an assignee to prove its standing to sue for patent infringement, it "must produce a written instrument documenting the transfer of proprietary rights in the patents.").

Second, as discussed above, on June 6, 2002, the date of the Alleged 2002 Assignment, there was nothing to assign as the provisional application had not yet been filed with the Patent Office. The Nunc Pro Tunc's description of the Alleged 2002 Assignment also indicates that it would not have been effective in transferring rights in the yet-to-be-filed provisional application. *See* Manual Patent Examination Procedure § 302.03 (requiring that assignments of provisional applications executed prior to the provisional application's filing date identify the name of each inventor and the title of the invention so there can be no mistake as to the provisional application that is the subject of the assignment). Here, the Nunc Pro Tunc does not quote any language from the Alleged 2002 Assignment; it simply describes the subject matter of that alleged assignment as the "patent" or the "patent invention." Ex. 7, at 1.

Finally, and most troubling, the Nunc Pro Tunc and Alleged 2002 Assignment directly contradict Ms. Jordahl's representations and warranties in the Attempted 2011 Assignment. (*Compare* Ex. 2 (the Attempted 2011 Assignment) representations and warranties indicating Ms. Jordahl had the "full and unencumbered right to assign" and "ha[d] not executed any document in conflict" with that warranty, with Ex. 7 (Nunc Pro Tunc) referencing the Alleged 2002 Assignment

and indicating that since that alleged assignment Ms. Jordahl "has believed that the patent belongs to the Assignee [Global Connect] and has conducted herself accordingly"). Such contradictions cast further doubt on the existence of the Alleged 2002 Assignment. *See FluorDx LLC v. Quidel Corp.*, No. 18-CV-2866 JLS (NLS), 2019 WL 4599842, at *4 (S.D. Cal. Sept. 23, 2019) (dismissing infringement action for lack of standing by noting, among other things, "The Post-Litigation Assignments are silent as to the Pre-Litigation Assignments," calling into question the existence of the Pre-Litigation Assignments which the plaintiff failed to produce).

In sum, the Nunc Pro Tunc purported "corrective" assignment does not create (or substantiate) that Global Connect held any patent rights prior to its dissolution. *Id.* Because Global Connect cannot demonstrate it had any exclusionary right in the '128 patent prior to filing the lawsuit, it lacked Article III standing and the case must be dismissed. *Paradise Creations*, 315 F.3d at 1309-10.

      **D.**    **Global Connect's Remaining Arguments Miss The Mark.**

Global Connect may attempt to rely on cases it identified in response to Best Buy's letters to argue that the Article III standing requirement is no longer a jurisdictional issue. *See* Exs. 5, 6, 8, and 9. Those cases are distinguishable. For example, the Federal Circuit's decision in *Schwendimann v. Arkwright Advanced Coating*, 959 F.3d 1065 (Fed. Cir. 2020), the main case Global Connect previously relied on (Ex. 6), addresses statutory, not Article III, standing: "[I]ntervening Supreme Court precedent [referring to the Supreme Court's *Lexmark* decision[5]] made clear that our earlier decisions treating the prerequisites of the Patent Act [*i.e.*, statutory standing] as jurisdictional were wrong." 959 F.3d 1065, 1071-72 (Fed. Cir. 2020) (stating "the only questions we must decide are whether Ms. Schwendimann was a patentee [pursuant to 35

---

[5] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

U.S.C. § 281] at the time her action was filed."). And while the *Schwendimann* panel (relying on footnote 4 from *Lexmark*[6]) goes on to state that "[a]s long as plaintiff alleges facts that support an arguable case or controversy under the Patent Act, the court has both statutory and constitutional authority to adjudicate the matter" (*id.* at 1071), the dissent correctly points out that the majority failed to reach the Article III standing question. *Id.* at 1077 (Reyna J. dissenting) ("the crux of the jurisdictional issue on appeal is not merely statutory … [t]he issue is constitutional … If a party has no Article III standing, the standing inquiry ends and the case must be dismissed."). The dissent also reiterates that Article III standing cannot be cured retroactively: "[T]he plaintiff is required to have at least some enforceable, exclusionary rights 'to the patent[] on the day it filed the complaint and that requirement **can not be met retroactively**.'" *Id.* at 1078 (emphasis original) (Reyna J. dissenting). In sum, and contrary to Global Connect's expected argument, *Schwendimann* did not alter the Article III standing analysis.[7]

The Federal Circuit's decisions post-*Schwendimann* confirm this conclusion. For example, in *In re Cirba*, the Federal Circuit clarified that "*Lexmark* and *Lone Star* warn against conflating

---

[6] *Lexmark*, 572 U.S. at 128 n.4.

[7] Global Connect also identified *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019) to show its pleading demonstrated Article III standing. But *Lone Star* is distinguishable. There, the plaintiff company was not dissolved when it brought the suit and there was a "transfer agreement" referenced in the complaint that gave the plaintiff some rights. *Id.* The issue was whether the plaintiff needed to be an "exclusive licensee" to have Article III standing or could have some lesser rights. The Court concluded that it was not necessary for the plaintiff to be an exclusive licensee to satisfy the Article III standing requirement. *Id.* at 1334-35. Here, Global Connect did not have any rights when it brought the lawsuit. It was a dissolved company, and the purported assignment was made while it was dissolved, making the assignment ineffective, which Global Connect tacitly admitted when it filed the Nunc Pro Tunc that does not even reference the earlier, ineffective 2011 assignment. Moreover, because the existence of Article III standing carries throughout the case, even if Global Connect's pleading was sufficient (it was not under these circumstances), Global Connect can no longer prove it had Article III standing when it filed suit. *Intellectual Tech.*, 101 F.4th at 814 (Article III standing "carries through the case and must be shown with the manner and degree of evidence required at the successive stages of the litigation.").

statutory requirements with jurisdictional/standing requirements . . . The same is true of *Schwendimann*." *In re Cirba,* 2021 WL 4302979, at *3. Likewise, in *Intellectual Tech*, the Federal Circuit emphasized that the distinction between Article III standing and statutory standing is "critical" because "Article III standing is a jurisdictional requirement, which is incurable if absent at the initiation of suit." *Intell. Tech* 101 F.4th 807 at 814 (citing *Paradise Creations,* 315 F.3d at 1309–10). Both *In re Cirba* and *Intellectual Tech.* were decided after the Supreme Court's *Lexmark* decision, which is the decision the *Schwendimann* panel relied on, and both decisions reiterate that Article III Constitutional standing remains a jurisdictional prerequisite requiring Global Connect possess some exclusionary right at the time the lawsuit is filed. Here, Global Connect did not have any exclusionary rights in the '128 patent at the time it filed suit, requiring this case be dismissed.

## II. Dismissal With Prejudice is Appropriate, As Is Awarding Best Buy Its Fees In Bringing This Motion.

Best Buy requests the dismissal be with prejudice and that the Court award Best Buy its fees under the Court's inherent authority.

Global Connect knew or should have known it was dissolved and that the Attempted 2011 Assignment did not confer any rights to the '128 patent before it filed suit. Counsel, likewise, should have learned these facts during its pre-suit investigation. And, post-suit, Best Buy informed Global Connect's counsel multiple times that Global Connect lacked standing, including: (i) in multiple telephone conversations, (ii) by serving discovery requests directed to that issue, (iii) by letter on August 1, 2025 (Ex. 5) that included extensive legal analysis, (iv) by letter on September 4, 2025 (Ex. 8) distinguishing cases identified by Global Connect in previous correspondence, and (v) during the meet and confer process prior to the filing of this motion. Best Buy provided Global Connect multiple opportunities to dismiss this lawsuit, which, had Global Connect done so, would

-11-

have conserved both the parties' and the Court's resources. However, Global Connect refused.

Instead, Global Connect doubled down, attempting to cure the legally uncurable standing defect and thus forcing Best Buy to expend additional resources to file this motion. This conduct has needlessly prolonged this litigation and driven up Best Buy's defense costs. This is not the first instance of such conduct. Earlier in this case, Best Buy filed a Motion to Dismiss. Dkt. 8. Global Connect responded by amending its complaint, but the First Amended Complaint did not address the merits of Best Buy's Motion to Dismiss, forcing Best Buy to expend resources to file a Renewed Motion to Dismiss (Dkt. 21),[8] which remains pending. Nor would this be the first case where Global Connect's counsel has been found to have needlessly prolonged a lawsuit and run up the defendant's costs. *See*, *e.g.*, *Symbology Innovations, LLC v. Valve Corp.*, No. 2:23-CV-00419-JRG, 2025 WL 364075, at *6, *11 (E.D. Tex. Jan. 31, 2025) (sanctioning counsel for, among other things, "needlessly increasing the cost of litigation"); *Decapolis Sys., LLC v. UT Sw. Health Sys.*, No. 2:22-CV-00159-JRG-RSP, 2025 WL 950067, at *2 (E.D. Tex. Mar. 28, 2025) (finding a case exceptional because, among other things, counsel took steps that "needlessly prolong[ed]" the suit). Best Buy, therefore, respectfully requests that dismissal be with prejudice and that the Court award Best Buy the fees it incurred in preparing this motion.

## CONCLUSION

For the foregoing reasons, Best Buy respectfully requests that the Court dismiss Global Connect's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(h)(3) and 12(b)(1) with prejudice and award Best Buy its fees for this motion.

---

[8] The details of the First Amended Complaint's failure to address the merits of Best Buy's Motion to Dismiss arguments are described in detail in Best Buy's Renewed Motion to Dismiss. See Dkt. 21, at 2-4 and 11-12.

Dated: October 17, 2025

Respectfully submitted,

*/s/ Mark C. Nelson*
Mark C. Nelson (lead counsel)
TX Bar No. 00794361
David Lisch
TX Bar No. 24077179
BARNES & THORNBURG LLP
2121 North Pearl Street, Ste. 700
Dallas, TX 75201
Tel: (214) 258-4200
Fax: (214) 258-4199
mark.nelson@btlaw.com
david.lisch@btlaw.com

Alexander Friel  (*pro had vice*)
BARNES & THORNBURG LLP
One Marina Park Drive, Suite 1530
Boston, MA 02210
Tel: (617) 316-5310
Fax: (617) 316-5311
alexander.friel@btlaw.com

**ATTORNEYS FOR DEFENDANTS BEST BUY CO., INC. AND BESTBUY.COM, LLC**

## CERTIFICATE OF CONFERENCE

As set forth in the facts above, counsel for the parties have had numerous conversations and correspondence regarding the issue of Plaintiff's lack of standing. On September 18, 2025, counsel for Best Buy (Messrs. Nelson and Lisch) conferred with counsel for Plaintiff (Mr. Honea) by telephone. Counsel were not able to reach agreement on the standing issue.

*/s/ Mark C. Nelson*
Mark C. Nelson

-14-

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2025 a copy of the foregoing document was served via the Court's ECF system on all parties who are deemed to have consented to electronic service.

*/s/ Mark C. Nelson*
Mark C. Nelson